**No. 21-50327**

In the United States Court of Appeals
For the Fifth Circuit

DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION,
INCORPORATED,

Plaintiffs - Appellants

v.

GURBIR S. GREWAL, Attorney General of New Jersey, in his official capacity,

Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, Austin Division; No. 1:18-CV-637

**Appellants' Motion for a Preliminary Injunction**

Clark Hill PLC
Matthew A Goldstein
1001 Pennsylvania Avenue Northwest
Suite 1300 South
Washington, DC 20004
(202) 550-0040

Josh Blackman LLC
Josh Blackman
1301 San Jacinto Street
Houston, Texas 77002
(202) 294-9003

Beck Redden LLP
Chad Flores
Daniel Nightingale
Hannah Roblyer
1221 McKinney Street
Suite 4500
Houston, Texas 77010
(713) 951-3700

**No. 21-50327**

In the United States Court of Appeals
For the Fifth Circuit

DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION, INCORPORATED,

Plaintiffs - Appellants

v.

GURBIR S. GREWAL, Attorney General of New Jersey, in his official capacity,

Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, Austin Division; No. 1:18-CV-637

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Plaintiffs – Appellants:          Defense Distributed
                                  Second Amended Foundation, Inc.

Counsel:                          Beck Redden LLP
                                  Chad Flores
                                  Daniel Nightingale
                                  Hannah Roblyer

                                  Clark Hill PLC
                                  Matthew A. Goldstein

                                  Josh Blackman LLC
                                  Josh Blackman

Defendant – Appellee:             Gurbir S. Grewal

Counsel:                          Office of the Attorney General for the State
                                  of New Jersey
                                  Jeremy M. Feigenbaum

                                  Pillsbury Winthrop Shaw Pittman, LLP
                                  Alexander Hardiman
                                  Benjamin D. Tievsky
                                  Kenneth W. Taber
                                  Ronald Casey Low
                                  Shelbi Flood

Defendants:                       Michael Pompeo
                                  Directorate of Defense Trade Controls
                                  Mike Miller
                                  Sarah Heidema

Counsel:                          United States Department of Justice
                                  Liane Ngin Moble
                                  Lisa Newman
                                  Jeremy M. Feigenbaum

                                  */s/ Chad Flores*
                                  Chad Flores
                                  Counsel for Appellants

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

TABLE OF CONTENTS ........................................................................................ iii

TABLE OF AUTHORITIES ................................................................................... v

NOTICE OF PANEL ASSIGNMENT ..................................................................... 1

MOTION FOR A PRELIMINARY INJUNCTION OR INJUNTION PENDING APPEAL ............................................................................................... 2

REQUEST FOR EXPEDITED CONSIDERATION ................................................. 3

STATEMENT OF THE CASE ................................................................................. 4

SUMMARY OF THE ARGUMENT ....................................................................... 5

ARGUMENT ........................................................................................................... 9

    I.    There is a sufficient likelihood of success on the merits. ..................... 9

        A.    Plaintiffs will likely succeed on the First Amendment claim. .................................................................................... 10

               1.    Content-based censorship makes Section 3($l$)(2) unconstitutional. ............................................................ 11

               2.    Overbreadth makes Section 3($l$)(2) unconstitutional. ............................................................ 14

               3.    A missing scienter element makes Section 3($l$)(2) unconstitutional. ................................................ 16

        B.    Plaintiffs will likely succeed on the Due Process Clause claim. .................................................................................... 17

        C.    Plaintiffs will likely succeed on the Commerce Clause claim. .................................................................................... 18

D.    The civil enforcement efforts are just as unconstitutional as the speech crime. .......................................19

II.    Irreparable harm will occur without an injunction pending appeal..............................................................................20

III.    The balance of equities favors an injunction pending appeal. ............21

IV.    The public interest favors an injunction pending appeal. ...................23

CONCLUSION ........................................................................................23

CERTIFICATE OF SERVICE ...............................................................25

CERTIFICATE OF COMPLIANCE......................................................26

# TABLE OF AUTHORITIES

**Case**                                                                    **Page(s)**

*Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y*
  *Freedom Found. v. D.C.*,
  846 F.3d 391 (D.C. Cir. 2017)....................................................18, 19

*Am. Booksellers Found. v. Dean*,
  342 F.3d 96 (2d Cir. 2003) ...................................................................21

*Am. Libraries Ass'n v. Pataki*,
  969 F. Supp. 160 (S.D.N.Y. 1997) ...............................................20, 21

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004)..............................................................................25

*Ashcroft v. Free Speech Coalition*,
  535 U.S. 234 (2002)..........................................................13, 15, 16

*Backpage.com, LLC v. Dart*,
  807 F.3d 229 (7th Cir. 2015) ...............................................................22

*Backpage.com, LLC v. Hoffman*,
  No. 13-CV-03952 DMC JAD, 2013 WL 4502097
  (D.N.J. Aug. 20, 2013).........................................................................20

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963)................................................................................22

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001).......................................................11, 13, 16

*Bernard v. Gulf Oil Co.*,
  619 F.2d 459 (5th Cir. 1980) (en banc), *aff'd*,
  452 U.S. 89 (1981)................................................................................22

*Bernstein v. U.S. Dep't of State*,
  922 F. Supp. 1426 (N.D. Cal. 1996).....................................................11

*In re Bradford*,
  660 F.3d 226 (5th Cir. 2011) .................................................................5

*Brandenburg v. Ohio*,
395 U.S. 444 (1969)........................................................................16

*Brown v. Entm't Merchs. Ass'n.*,
564 U.S. 786 (2011)........................................................................14

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949)..........................................................................5

*Dana's R.R. Supply v. Attorney Gen., Florida*,
807 F.3d 1235 (11th Cir. 2015)..................................................18, 24

*Def. Distributed v. Attorney Gen. of New Jersey*,
972 F.3d 193 (3d Cir. 2020) .............................................................4

*Def. Distributed v. U.S. Dep't of State*,
2015 WL 9267338, 838 F.3d 451 (5th Cir. 2016)............................12

*Defense Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020) .............................................................4

*Fairley v. Andrews*,
578 F.3d 518 (7th Cir. 2009) ...........................................................24

*Fla. Businessmen for Free Enter. v. City of Hollywood*,
648 F.2d 956 (5th Cir. Unit B 1981) ..................................................9

*Garber v. Randell*,
477 F.2d 711 (2d Cir. 1973) ..............................................................6

*Globe Newspaper Co. v. Sup. Ct. for Norfolk Cty.*,
457 U.S. 596 (1982)........................................................................14

*Healy v. Beer Inst.*,
491 U.S. 324 (1989)........................................................................21

*Hess v. Indiana*,
414 U.S. 105 (1973)........................................................................16

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010).............................................................................17

*Junger v. Daley*,
   209 F.3d 481 (6th Cir. 2000) ..............................................................................11

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982)...........................................................................................24

*New York v. Ferber*,
   458 U.S. 747 (1982)...........................................................................................18

*NIFLA v. Becerra*,
   138 S. Ct. 2361 (2018).......................................................................................12

*O'Donnell v. Goodhart*,
   900 F.3d 220 (5th Cir. 2018) ..............................................................................26

*Okwedy v. Molinari*,
   333 F.3d 339 (2d Cir. 2003) ...............................................................................22

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970)...........................................................................................20

*Rattner v. Netburn*,
   930 F.2d 204 (2d Cir. 1991) ...............................................................................22

*Reed v. Town of Gilbert, Ariz.*,
   135 S. Ct. 2218 (2015).......................................................................................12

*Rice v. Paladin Enters., Inc.*,
   128 F.3d 233 (4th Cir. 1997) ..............................................................................18

*Rocky Mtn. Farmers Union v. Corey*,
   730 F.3d 1070 (9th Cir. 2013) ............................................................................20

*In re Rolls Royce Corp.*,
   775 F.3d 671 (5th Cir. 2014) ................................................................................6

*Ruiz v. Estelle*,
   650 F.2d 555 (5th Cir. 1981) ................................................................................9

*In re Sepulvado*,
   707 F.3d 550 (5th Cir. 2013) ................................................................................5

*Smith v. California*,
    361 U.S. 147 (1960).........................................................................18

*Smith v. Goguen*,
    415 U.S. 566 (1974).........................................................................19

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011).........................................................................11

*Staples v. United States*,
    511 U.S. 600 (1994).........................................................................16

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ...........................................................22

*United States v. Aguilar*,
    515 U.S. 593 (1995).........................................................................17

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803 (2000).........................................................................14

*United States v. Stevens*,
    559 U.S. 460 (2010).........................................................................16

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001) ............................................................11

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) .............................................6

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989).........................................................................12

*Whole Woman's Health v. Hellerstedt*,
    136 S. Ct. 2292 (2016).....................................................................14

## Rules

5th Cir. R. 27.4....................................................................................3

Fed. R. App. P. 8(a) ............................................................................2

**Other Authorities**

15 Charles A. Wright & Arthur R. Miller et. al.,
    Federal Practice & Procedure: Jurisdiction and Related Matters
    (4th ed. West 2021) .............................................................................................5

*Does an Individual Need a License to Make a Firearm for Personal
    Use?*, Bureau of Alcohol, Tobacco, Firearms and Explosives (Nov.
    6,   2017),   https://www.atf.gov/firearms/qa/does-individual-need-
    license-makefirearm-personal-use ....................................................................18

William J. Krouse, *Gun Control: 3D-Printed AR-15 Lower Receivers*,
    Cong. Res. Serv. Insight, 2 (Aug. 22, 2018),
    https://fas.org/sgp/crs/misc/IN10957.pdf .........................................................18

## NOTICE OF PANEL ASSIGNMENT

By order of the Court in this case's prior appeal, this appeal, this motion, and any other "future requests for appellate relief shall be directed to the panel consisting of Judges JONES, ELROD, and HIGGINSON." Order, *Defense Distributed v. Grewal*, No. 19-50723 (Sept. 11, 2020) (per curiam) (attached as Exhibit A).

## MOTION FOR A PRELIMINARY INJUNCTION OR
## INJUNCTION PENDING APPEAL

Appellants Defense Distributed and the Second Amendment Foundation, Inc. move for a preliminary injunction, or in the alternative an injunction pending appeal, against Appellee New Jersey Attorney General Gurbir Grewal. *See* Fed. R. App. P. 8(a). Until the Appellants' case against Grewal is complete, or in the alternative at least until this appeal's completion, the Court should enjoin Grewal from (1) enforcing New Jersey Statute § 2C:39-9(*l*)(2) against Appellants, (2) directing Appellants to cease and desist publishing computer files with digital firearms information, and (3) directing Appellants' communication service providers to cease and desist publishing Plaintiffs' computer files with digital firearms information.

Appellants informed Grewal's counsel of this motion. He will oppose.

## **REQUEST FOR EXPEDITED CONSIDERATION**

Defense Distributed and SAF request that the Court decide this motion as soon as is practicable after allotting five days for a response and three days for reply. *See* 5th Cir. R. 27.4.

Time is of the essence because Grewal is wielding a blatantly unconstitutional speech crime against Defense Distributed and SAF. With every passing day, Grewal's censorship causes more and more irreparable harms nationwide.

Appellants have always been and continue to be diligent. Before now, they sought a preliminary injunction against Grewal on *four* occasions in *four* different courts (one at a time)—all to no avail. Despite having patiently done everything the rules require, no court has ever ruled on the merits of these preliminary injunction requests. Every time such a ruling nears, Grewal uses gamesmanship to skirt judicial scrutiny. His delay tactics have delayed the administration of justice and prejudiced Appellants by wildly increasing litigation costs. Instead of letting Grewal escape yet again, the Court should resolve this motion with all deliberate speed.

## STATEMENT OF THE CASE

"This appeal arises from the ongoing efforts of New Jersey's Attorney General Gurbir Grewal and several of his peers to hamstring the plaintiffs' distribution of materials related to the 3D printing of firearms." *Defense Distributed v. Grewal*, 971 F.3d 485, 488 (5th Cir. 2020). "To defend against their efforts, the plaintiffs filed this lawsuit, alleging, *inter alia*, infringement of their First Amendment rights" and seeking a preliminary injunction. *Id.* But when a preliminary injunction was sought below, Grewal convinced the district court to dismiss the case for lack of personal jurisdiction. *Id.* Plaintiffs appealed. *Id.*

While the appeal was pending in this Court, Plaintiffs proceeded as the rules permit, asking the federal courts in New Jersey to enjoin Grewal's censorship. *See Def. Distributed v. Attorney Gen. of New Jersey*, 972 F.3d 193 (3d Cir. 2020). But Grewal convinced them to do nothing and defer to the federal courts in Texas. *Id.*

Back in Texas, Grewal lost the personal jurisdiction appeal. This Court "conclude[d] that Grewal is subject to the jurisdiction of Texas courts" and remanded. *Defense Distributed v. Grewal*, 971 F.3d at 488.

Grewal sought both panel rehearing and rehearing *en banc*. Ex. C. Having chosen to keep this Court in charge of the case indefinitely, Grewal could not complain about having to address a request for temporary injunctive relief here. So Plaintiffs asked for an injunction pending appeal. Ex. D. But rather than let this

Court address the issue of temporary relief, *Grewal withdrew his petition for rehearing* so the mandate would issue before the Court could act.  Ex. E.

On remand, Defense Distributed and SAF amended the complaint to account for new facts about Grewal and assert related claims against the State Department. Doc. 117.  Then Grewal's procedural shell games resumed.

Grewal filed a motion to sever the case against him and transfer it to New Jersey.  Doc. 121.  The State Department opposed this relief, Doc. 136, as did Plaintiffs, Doc. 135.  The district court nevertheless granted Grewal's motion, Doc. 145,[1] and  Plaintiffs timely appealed.  Doc. 146.  This Court has jurisdiction.[2]

The State Department is in retreat.  As of Wednesday, "the State Department no longer regulates the files at issue in this litigation."  Ex. J at 3.  Not Grewal, though. His censorship remains in full force, never relenting, causing more and more irreparable harm with every passing day.

---

[1] As transferee, the District of New Jersey docketed the case as No. 3:21-cv-09867-MAS-TJB.

[2] *See* 15 Charles A. Wright & Arthur R. Miller et. al., Federal Practice & Procedure: Jurisdiction and Related Matters § 3855 (4th ed. West 2021) ("If the transfer was made from a district in one circuit to a district in another, only the court of appeals in the circuit of the transferor can review the decision.").  This Court has appellate jurisdiction over the severance and transfer decision by virtue of the collateral order doctrine, *see generally Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), because (1) this appeal will conclusively determine the correctness of the severance and transfer decision, (2) the severance and transfer decision is separate from the action's merits, and (3) the severance and transfer decision is effectively unreviewable otherwise. *See In re Sepulvado*, 707 F.3d 550, 552 (5th Cir. 2013) (doctrine covers transfer orders); *Garber v. Randell*, 477 F.2d 711, 716 (2d Cir. 1973) (same for severance).  Alternatively, this Court has mandamus jurisdiction over the severance and transfer decision, *see In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308 (5th Cir. 2008) (en banc); *In re Rolls Royce Corp.*, 775 F.3d 671, 677 (5th Cir. 2014), which Appellants hereby invoke to the extent necessary.

## SUMMARY OF THE ARGUMENT

New Jersey Attorney General Gurbir Grewal is carrying out a blatantly unconstitutional campaign of censorship against Plaintiffs. The question is not whether Grewal will lose on the merits, but how. Will he lose in Texas or New Jersey? Alone? Or alongside the State Department? These questions will matter in due course, but not now. All that matters now is whether Grewal will *ultimately* lose on the merits, which he will. Because Grewal is going to lose on the merits *regardless of where the suit ends up* and *regardless of whether the State Department is in the case*, his ongoing censorship of Plaintiffs should be preliminary enjoined.

Extraordinarily harmful speech suppression makes the need for relief dire. Grewal threatens to enforce a new criminal law against Plaintiffs, Section 3(*l*)(2) of New Jersey Senate Bill 2465, N.J. Stat. 2C:39-9(*l*)2. Section 3(*l*)(2) criminalizes constitutionally protected speech that Plaintiffs have engaged in before and would be engaging in now but for Grewal's suppression. Plaintiffs have been and are being censored—their exercise of constitutional rights has been and is being both directly denied and indirectly chilled—because of Grewal's promise to jail them and anyone else who speaks in violation of the Section 3(*l*)(2) speech crime.

Section 3(*l*)(2) does not criminalize conduct. It criminalizes speech: "digital instructions" that "may be used" to "produce a firearm" with a "three-dimensional printer." Section 3(*l*)(2) makes it a crime to "distribute" that speech "to a person in

6

New Jersey" (except for manufacturers and wholesalers).  The law provides a limitless definition of "distribute": "to sell, or to manufacture, give, provide, lend, trade, mail, deliver, publish, circulate, disseminate, present, exhibit, display, share, advertise, offer, or make available via the Internet or by any other means, whether for pecuniary gain or not, and includes an agreement or attempt to distribute."

No medium escapes this new crime.  Section 3(*l*)(2) outlaws speech delivered "by any means," including "via the Internet" or standard postal "mail."  The crime also extends to in-person interactions such as "display[ing]," "present[ing]," and "giv[ing]" information face-to-face.

All kinds of digital firearms information are censored by this speech crime. The ban covers both "computer-aided design files" *and* "other code or instructions stored and displayed in electronic format as a digital model."

The information's actual use is irrelevant.  The crime occurs if information "*may be used*" by a third party in certain activities, regardless of the speaker's intent.

Section 3(*l*)(2) is unconstitutional.  It is an extreme act of content-based censorship that stands no chance of satisfying strict scrutiny because it is overbroad, underinclusive, ineffective, and lacking a scienter element. It punishes speakers worldwide not because the speech is false (it is not) or causes any harm (it does not), but because of speculation that the speech may sometimes bear a contingent and indirect relationship to other peoples' bad acts.

More and more irreparable harm of the highest order will occur if Grewal is allowed to continue enforcing Section 3(*l*)(2) against Plaintiffs. The harm is not just prospective. It is current. With every passing day, Grewal causes irreparable injury by chilling protected speech and forcing self-censorship.

Ultimately, Grewal's enforcement of Section 3(*l*)(2) is likely to be held unconstitutional and permanently enjoined. Until then, the Court should prevent the infliction of further irreparable harm and restore the status quo ante by enjoining Grewal's enforcement of Section 3(*l*)(2) against Defense Distributed and SAF.

In addition to the *criminal* law, Grewal has for years been acting in parallel to censor Plaintiffs under the color of state *civil* laws. These actions impose a prior restraint that is just as violative of free speech protections as is Section 3(*l*)(2). They too are bound to be held unconstitutional. They too should be enjoined until a final judgment stops this censorship for good.

# ARGUMENT

Familiar injunction rules govern both preliminary injunctions (the motion's main request) and injunctions pending appeal (its alternative request). *See, e.g.*, *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 957 (5th Cir. Unit B 1981). Factors to consider include the likelihood of success on the merits, irreparable harm, equities between the parties, and public interest. *See, e.g.*, *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). All factors warrant relief here.[3]

Plaintiffs have proven their entitlement to preliminary injunctive relief repeatedly, both in the court below[4] and elsewhere.[5] Lest there be any doubt, current evidence shows that all material facts warranting a preliminary injunction against Grewal are just as true now as they were originally. *See* Ex. I.

## I.     There is a sufficient likelihood of success on the merits.

On the merits, this action's central question is whether Grewal's use of state civil and criminal law to censor Plaintiffs violates the First Amendment and other key free speech protections. It does. Plaintiffs are likely to succeed in having both the speech crime and Grewal's civil enforcement actions held unconstitutional and permanently enjoined.

---

[3] Federal Rule of Appellate Procedure 8 has been satisfied because this motion seeks the same kind of injunction that the district court refused to grant, Doc. 100, and because returning to the district court at this juncture would be impracticable and inequitable. *See Ruiz v. Estelle*, 650 F.2d 555, 567 (5th Cir. 1981).

[4] *See* Docs. 52, 65, 67.

[5] *See* Exs. F, G. H.

This holds true regardless of *where* the case ends up and *who* else is in it. Ultimately, Grewal's defeat does *not* depend on which court issues the final judgment (Texas vs. New Jersey) and does *not* depend on whether other defendants lose with him. So while it is true that Plaintiffs are likely to succeed in the instant appeal and have the case against Grewal returned to Texas and re-joined with the case against the State Department, that *procedural* dispute is not what the instant motion's "likelihood of success on the *merits*" inquiry turns on. Instead, the instant inquiry turns solely on whether Plaintiffs will likely succeed in having Grewal's censorship deemed illegal. They will.

### A.    Plaintiffs will likely succeed on the First Amendment claim.

Plaintiffs plead that Grewal has violated, is violating, and is threatening to violate 42 U.S.C. § 1983 by acting, under color of state law, to abridge the Plaintiffs' First Amendment freedoms. Doc. 117 at 71-73, ¶¶ 257-267. With respect to the enforcement of Section 3(*l*)(2), Plaintiffs are likely to succeed on the merits of the First Amendment claim for at least three independent reasons.

Before addressing those arguments, the Court should hold that the Plaintiffs' distribution of the digital firearms information at issue qualifies as First Amendment speech. Proof shows that the digital firearms information at issue here qualifies as First Amendment speech under all of the applicable modern precedents. *Compare* ROA.124–30 (second amended complaint), Doc. 65-25 at 3 (Declaration of the

10

seminal industry expert explaining 3D-printing processes), Doc. 65-26 at 1-9 (Declaration of Defense Distributed's Director), Doc. 65-34 (industry publication explaining 3-D printing processes), Doc. 65-35 (same), *and* Doc. 65-36 (same), *with Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("[T]he creation and dissemination of information are speech."), *Bartnicki v. Vopper*, 532 U.S. 514, 526–27 (2001) ("[G]iven that the purpose of [the delivery of a tape recording] is to provide the recipient with the text of recorded statements…it is the kind of 'speech' that the First Amendment protects."), *Junger v. Daley*, 209 F.3d 481, 482 (6th Cir. 2000) ("Because computer source code is an expressive means for the exchange of information…we hold that it is protected by the First Amendment."), *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 449 (2d Cir. 2001) ("[C]omputer code, and computer programs constructed from code can merit First Amendment protection."), *Bernstein v. U.S. Dep't of State*, 922 F. Supp. 1426, 1436 (N.D. Cal. 1996) ("source code is speech"). This is a speech case, and an extraordinarily important one at that.

### 1. Content-based censorship makes Section 3(*l*)(2) unconstitutional.

Section 3(*l*)(2) is a content-based speech restriction. Facially, the law is content-based because it criminalizes "digital instructions" that "may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component." *See NIFLA v. Becerra*, 138 S. Ct. 2361, 2371 (2018); *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015). The

law's justification also makes it content-based because its enactors created the crime to punish the *idea* being conveyed—digital firearm information. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

As a content-based speech restriction, Section 3(*l*)(2) is presumptively unconstitutional; it is valid only if New Jersey "prove[s] that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231. That burden cannot be met for at least four reasons.

First, Section 3(*l*)(2) does not advance a compelling state interest. The holding of *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), controls: "The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Id.* at 253. The government "may not prohibit speech" if the speech merely "increases the chance an unlawful act will be committed 'at some indefinite future time.'" *Id.* A "remote connection" between speech and a third party's criminal conduct is not enough. *Id.* "Without a significantly stronger, more direct connection, the Government may not prohibit speech on the ground that it may encourage [third-parties] to engage in illegal conduct." *Id.* Yet that is the interest Section 3(l)(2) seeks to advance. Under *Ashcroft*, it is not compelling.

Second, Section 3(*l*)(2) does not meet the narrow tailing requirement because plausible, less restrictive alternatives exist. New Jersey could achieve its ends by banning only the harmful *conduct* at issue—not speech that is merely and only

sometimes remotely associated with that conduct. *See Bartnicki*, 532 U.S. at 529 ("The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it.").

Third, Section 3(*l*)(2) is substantially underinclusive. While it criminalizes the "distribution" of digital firearms information, Section 3(*l*)(2) does nothing about the *possession* of that same information. While it criminalizes speech regarding "firearms," Section 3(*l*)(2) does nothing about speech regarding other dangerous instrumentalities (e.g., poison or bombs). And while it criminalizes speech by normal people, Section 3(*l*)(2) does nothing about the speech of firearms manufacturers or wholesalers.

Fourth, New Jersey cannot prove that Section 3(*l*)(2) actually advances the state's aims. In the First Amendment context, justifications backed by mere "anecdote and supposition" do not suffice. *U.S. v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 822 (2000). Neither does "ambiguous proof." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 800 (2011). Compelling "empirical support" of efficacy must be given. *Globe Newspaper Co. v. Sup. Ct. for Norfolk Cty.*, 457 U.S. 596, 609 (1982). None exists here. *Cf. Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2313-14 (2016) ("Determined wrongdoers, already ignoring existing statutes and safety measures, are unlikely to be convinced to adopt safe practices by a new overlay of regulations.").

In particular, Grewal's effort to prove efficacy is bound to fail because the information he seeks to censor is already available across the internet. *See* Docs. 65-24, 65-27. The information that Defense Distributed published was committed to the internet's public domain, where independent republishers will make those files readily accessible on one website or another forever—regardless of whether Grewal decides to exact vengeance on the publisher he most dislikes. Grewal has admitted as much in his own court filings. *See* Docs. 65-4 at 87, 65-6 at 1 ("Once [Defense Distributed] opens that Pandora's box, it can never be closed."). Because it is *impossible* to erase information from the internet's public domain, Grewal cannot possibly establish that post-hoc prosecution of Defense Distributed will effectuate any supposed state interest.

### 2.     Overbreadth makes Section 3(*l*)(2) unconstitutional.

The First Amendment claim is also likely to succeed because Section 3(*l*)(2) is overbroad. The overbreadth doctrine "prohibits the Government from banning unprotected speech" where "a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft*, 535 U.S. at 255. Section 3(*l*)(2) violates this doctrine in a litany of ways.

First, Section 3(*l*)(2) criminalizes speech regardless of its relationship to illegal conduct. Constitutionally, the "government may not prohibit speech because it increases the chance an unlawful act will be committed 'at some indefinite future

time'"; it may "suppress speech for advocating the use of force or a violation of law only if 'such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'" *Id.* at 253-54. In this context, states can only prohibit speech to prevent "criminal conduct" when the speech is "integral" to that conduct. *U.S. v. Stevens*, 559 U.S. 460, 468 (2010). Speech that has only a "contingent and indirect" relationship to criminal conduct does not satisfy this test. *Ashcroft*, 535 U.S. at 250. It is not enough for New Jersey officials to say that there is "some unquantified potential for subsequent criminal acts." *Id.* Indeed, the Supreme Court has recognized that "it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law abiding third party." *Bartnicki*, 532 U.S. at 529-30.

Virtually all of the speech covered by Section 3(*l*)(2) falls on the protected side of the line, either because the recipient commits no illegal act at all or because, if they did, the causal link is contingent and indirect. *Cf. Staples v. U.S.*, 511 U.S. 600, 610 (1994) ("[T]here is a long tradition of widespread lawful gun ownership by private individuals in this country."). Yet Section 3(*l*)(2) still criminalizes every instance of "distribut[ion]" no matter what.

Second, Section 3(*l*)(2) criminalizes information about any "firearm component," which includes a wide array of generic items—such as nuts and bolts—

that have unlimited potential uses not unique to firearms.  New Jersey obviously cannot criminalize speech about mundane parts available in any hardware store.

Third, Section 3(*l*)(2) fails to distinguish between information that has, and has not, been committed to the public domain.  Digital firearms information is already freely circulating in the public domain because of prior publications.  And "the Government may not . . . restrict individuals from disclosing information that lawfully comes into their hands in the absence of a state interest of the highest order." *U.S. v. Aguilar*, 515 U.S. 593, 605 (1995).  Yet this statute draws no distinction between truly novel "instructions" and those that everyone with a smartphone has been able to obtain with simple Google searches for years.

### 3. A missing scienter element makes Section 3(*l*)(2) unconstitutional.

The First Amendment claim is also likely to succeed because Section 3(*l*)(2) lacks a necessary scienter element.  States cannot create speech crimes without requiring knowledge of the fact that distinguishes innocent acts from guilty ones. *See, e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16-17 (2010).  Section 3(*l*)(2) lacks this requirement.  It does not even require the speaker to know that instructions will "be used to program a three-dimensional printer to manufacture or produce a firearm"—let alone know that the recipient would use the information to engage in the *illegal* conduct.  *See Rice v. Paladin Enters., Inc.*, 128 F.3d 233, 247-48 (4th Cir. 1997).

16

**B.    Plaintiffs will likely succeed on the Due Process Clause claim.**

Plaintiffs also plead that Grewal has violated and is threatening to violate § 1983 because Section 3(*l*)(2) is void for vagueness under the Due Process Clause. Doc. 117 at 75-76.[6]  A law is void for vagueness if it either (1) "fail[s] to…enable ordinary people to understand what conduct it prohibits" or (2) "authorize[s] and…encourage[s] arbitrary and discriminatory enforcement.'" *Act Now*, 846 F.3d at 409.  Section 3(*l*)(2) does both.

Specifically, Section 3(*l*)(2) criminalizes speech "*that may be* used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component."  But it is impossible for a speaker to know what "code…*may be* used" for.  In the same way that "(w)hat is contemptuous to one man may be a work of art to another," *Smith v. Goguen*, 415 U.S. 566, 575 (1974), what "may be used" by one programmer can be totally useless to another.  Plaintiffs cannot tell on which side of the line their speech will fall.

"Statutory language of such a standardless sweep" both chills speech nationwide and encourages arbitrary and discriminatory enforcement.  *See Smith*, 415 U.S. at 575.  Indeed, this is the case in point for selective enforcement.  At

---

[6] Pre-enforcement facial vagueness challenges are allowed to address the Due Process Clause's concern for "arbitrary and discriminatory enforcement," *Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.*, 846 F.3d 391, 410 (D.C. Cir. 2017), and also to the extent that they seek to halt the chilling of protected speech, *Dana's R.R. Supply v. Attorney Gen., Florida*, 807 F.3d 1235, 1241 (11th Cir. 2015*)*.  Plaintiffs' claim implicates both concerns.

Section 3(*l*)(2)'s signing ceremony, Grewal indicated he would prosecute Defense Distributed not because it poses some sort of unique threat but because it espouses views Grewal dislikes.  *See* Doc. 52-2.

### C.  Plaintiffs will likely succeed on the Commerce Clause claim.

Grewal's conduct also violates the dormant Commerce Clause.  Doc. 117 at 76-78, ¶¶ 294-303.  Strict scrutiny applies to any law that discriminates against out-of-state economic interests on its face, in its purpose, or in its practical effect.  *Rocky Mtn. Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013).  Section 3(*l*)(2) does so by "regulat[ing] conduct that takes place exclusively outside the state." *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *11 (D.N.J. Aug. 20, 2013).

Specifically, Section 3(*l*)(2) discriminates against out-of-state speakers who passively operate websites outside New Jersey, projecting New Jersey's law about what can be said on the internet throughout the entire Union.  *See Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 182 (S.D.N.Y. 1997).  The statute also discriminates via its "offer" and "advertisement" bans, which target conduct that often occurs outside of New Jersey—such as at the trade shows that Defense Distributed attends.  These applications are direct, substantial parts of the statute, making it per se unconstitutional, "regardless of whether the statute's extraterritorial reach was intended by the legislature." *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989); *see Am. Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003).

**D.    The civil enforcement efforts are also unconstitutional.**

The Court should also issue an injunction pending appeal against Grewal's use of civil legal actions to censor the Plaintiffs. The same constitutional analysis that applies to Section 3(*l*)(2) applies to Grewal's use of civil methods to censor Plaintiffs. Indeed, the application of "public nuisance and negligence laws" to speech on the internet is orders-of-magnitude more overbroad, underinclusive, and vague than Section 3(*l*)(2). Additionally, the Plaintiffs are likely to succeed on the merits of their Section 1983 action's First Amendment claim because Grewal's conduct violates the doctrine regarding unconstitutional prior restraints.

Grewal's delivery of a cease-and-desist letter to Defense Distributed constitutes a prior restraint because it demands—in advance, and upon pain of legal punishment—that Defense Distributed *never* publish "printable-gun computer files for use by New Jersey residents." Doc. 65-3 at 1. Civil actions like Grewal's effort to obtain an *ex parte* temporary restraining order against Defense Distributed function in the same way. *See* Doc. 65-4.

As prior restraints, Grewal's civil censorship efforts are presumed unconstitutional. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 71-72 (1963); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 579 (5th Cir. 2005). Grewal cannot overcome this presumption. The same reasoning that prevents Section 3(*l*)(2) from surviving strict scrutiny also spells defeat for the civil censorship effort as a

19

prior restraint. *See Bernard v. Gulf Oil Co.*, 619 F.2d 459, 473 (5th Cir. 1980) (en banc).

Importantly, this constitutional violation encompasses both the action taken directly against the Plaintiffs *and* the indirect efforts to threaten, coerce, and intimidate internet service providers. *See Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015); *Okwedy v. Molinari*, 333 F.3d 339 (2d Cir. 2003); *Rattner v. Netburn*, 930 F.2d 204 (2d Cir. 1991).

## II.   Irreparable harm will occur without an injunction pending appeal.

Grewal's censorship via Section 3(*l*)(2) and the parallel civil efforts causes irreparable harm currently, and unless enjoined, will do so to an even greater extent in the future.  Plaintiffs have engaged—and would engage in the future—in at least three distinct courses of conduct that the Grewal's unconstitutional censorship actions outlaw: publication of digital firearms information on the internet, via the mail, and through offers and advertisements. *See* Ex I; Doc. 117 at 47-49, ¶¶ 171-183; Doc. 65-26 at 1-2, 7-9, ¶¶ 4-7, 29-32.  Section 3(*l*)(2) clearly covers all of this conduct by making it a crime to "distribute" the banned "digital instructions" "by any means, including the Internet," and defining "distribute" to mean "mail," "offer," and "advertise."  And Grewal's civil threats also target Plaintiffs' activities. *See* Docs. 65-3, 4.  But for Grewal's threats, Plaintiffs would have continued to engage in these constitutionally protected courses of conduct.

Legally, Grewal's censorship causes several distinct First Amendment harms. The speech crime would, if enforced as Grewal threatens, result in unconstitutional convictions; and civil enforcement actions would result in unconstitutional liability judgments. *See, e.g., NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 932–33 (1982). The act of threatening either kind of enforcement already imposes an unconstitutional prior restraint. *See, e.g.*, *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). And Grewal's enforcement efforts cause a chilling effect that is itself a distinct First Amendment harm. *See Dana's R.R. Supply v. Atty. Gen., Flo.*, 807 F.3d 1235, 1241 (11th Cir. 2015). All of these lost First Amendment freedoms "unquestionably constitute[] irreparable injury" of the highest order. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

## III.  The balance of equities favors an injunction pending appeal.

The balance of equities favors an injunction. The risk of erroneously denying the injunction entails the "potential for extraordinary harm and a serious chill upon protected speech." *Ashcroft v. ACLU*, 542 U.S. 656, 671 (2004). "The harm done from letting [an] injunction stand pending a trial on the merits, in contrast, will not be extensive," especially where, as here, "[n]o prosecutions have yet been undertaken under the law, so none will be disrupted if the injunction stands." *Id.*

Indeed, New Jersey will not suffer any harm—and certainly not irreparable harm—if the status quo is restored during this suit's pendency.  The only viable interest New Jersey could have is a retrospective one: punishing citizens for past speech.  But there is nothing urgent about that draconian goal; the punishment can be doled out a year from now just as well as it can today.

Moreover, whatever interests Grewal might have in immediate censorship (none) will never be achieved because the bell has already been rung.  Every file that has already been introduced to the internet's public domain will always be there, as independent republishers beyond anyone's control have made and will continue to make the files readily accessible on one website or another forever.  Doc. 148-74 at 3.  It therefore does the government no harm whatsoever to temporarily stall whatever punitive enforcement actions they have in mind against Plaintiffs.

Procedurally, moreover, Plaintiffs have litigated this dispute reasonably and diligently.  Despite having played everything by the book, no court anywhere has ever ruled on the merits of their request for a preliminary injunction.

Meanwhile, Grewal's procedural shell games have delayed justice.  Every step of the way, he has fought tooth and nail to avoid having any court decide whether a preliminary injunction should be issued.  He fights not to win those rulings, but to avoid any ruling whatsoever—and in so doing has unnecessarily depleted his opponent's limited litigation resources.  From court to court across the

nation, Plaintiffs have chased the fleeing Grewal as fast as their limited capacities allow.  No more avoidance should be tolerated.

Grewal's position in the Third Circuit bears emphasis.  To oppose Defense Distributed and SAF's request to the Third Circuit for interim injunctive relief, Grewal told the Third Circuit that it "should stay its hand and allow the Fifth Circuit, in the first instance, to adjudicate the claims presented."  Defendant-Appellees' Brief in Opposition to Petition for Rehearing En Banc, *Defense Distributed v. Grewal*, No. 19.1729, Doc. 97 at 10 (filed Jan. 9, 2020).  Having convinced the Third Circuit to do just that, Grewal cannot now complain about the instant motion's presentation.

## IV.    The public interest favors an injunction pending appeal.

Preventing the violation of a party's constitutional rights always serves the public interest.  *See, e.g.*, *O'Donnell v. Goodhart*, 900 F.3d 220, 232 (5th Cir. 2018).

## CONCLUSION

Defense Distributed and the Second Amendment Foundation respectfully request that the Court give this motion expedited consideration and grant it.

May 27, 2021                                  Respectfully submitted,

Clark Hill PLC                               Beck Redden LLP
Matthew A Goldstein                         /s/ Chad Flores
1001 Pennsylvania Avenue Northwest          Chad Flores
Suite 1300 South                            Daniel Nightingale
Washington, DC 20004                        Hannah Roblyer
(202) 550-0040                              1221 McKinney Street
                                            Suite 4500
Josh Blackman LLC                           Houston, Texas 77010
Josh Blackman                               (713) 951-3700
1301 San Jacinto Street
Houston, Texas 77002
(202) 294-9003

Attorneys for Plaintiffs – Appellants
Defense Distributed and Second Amendment Foundation, Inc.

## CERTIFICATE OF SERVICE

On May 27, 2021, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system to the following:

Alexander Hardimaney
alexander.hardiman@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman, L.L.P.
31 W. 52nd Street
New York, NY 10019

Ronald Casey Low
casey.low@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman, L.L.P.
401 Congress Avenue
Austin, TX 78701

/s/ *Chad Flores*
Chad Flores

## CERTIFICATE OF COMPLIANCE

This filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27 because it contains 5,107 not-exempted words.

This filing complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 and Fifth Circuit Rule 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point font.

/s/ *Chad Flores*
Chad Flores