No. 21-50327

In the United States Court of Appeals
For the Fifth Circuit

DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION,
INCORPORATED,

Plaintiffs - Appellants

v.

GURBIR S. GREWAL, Attorney General of New Jersey, in his official and
individual capacities,

Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, Austin Division; No. 1:18-CV-637

**Brief of Appellants**

Clark Hill PLC
Matthew A Goldstein
1001 Pennsylvania Avenue Northwest
Suite 1300 South
Washington, DC 20004
(202) 550-0040

Josh Blackman LLC
Josh Blackman
1301 San Jacinto Street
Houston, Texas 77002
(202) 294-9003

Beck Redden LLP
Chad Flores
Daniel Nightingale
Hannah Roblyer
1221 McKinney Street
Suite 4500
Houston, Texas 77010
(713) 951-3700

**No. 21-50327**

In the United States Court of Appeals
For the Fifth Circuit

DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION,
INCORPORATED,

Plaintiffs - Appellants

v.

GURBIR S. GREWAL, Attorney General of New Jersey, in his official and
individual capacities,

Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, Austin Division; No. 1:18-CV-637

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an

interest in the outcome of this case. These representations are made in order that the

judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Plaintiffs – Appellants: | Defense Distributed<br>Second Amended Foundation, Inc. |
| Counsel: | Beck Redden LLP<br>Chad Flores<br>Daniel Nightingale<br>Hannah Roblyer<br><br>Clark Hill PLC<br>Matthew A. Goldstein<br><br>Josh Blackman LLC<br>Josh Blackman |
| Defendant – Appellee: | Gurbir S. Grewal |
| Counsel: | Office of the Attorney General for the State of New Jersey<br>Jeremy M. Feigenbaum<br>Angela Cai<br><br>Pillsbury Winthrop Shaw Pittman, LLP<br>Alexander Hardiman<br>Benjamin D. Tievsky<br>Kenneth W. Taber<br>Ronald Casey Low<br>Shelbi Flood |
| Defendants: | Michael Pompeo<br>Directorate of Defense Trade Controls<br>Mike Miller<br>Sarah Heidema |
| Counsel: | United States Department of Justice<br>Brian Boynton<br>Anthony J. Coppolino<br>Liane Noble<br>Gregg N. Sofer<br>Lisa Newman<br>Michael Knapp |

Zachary A. Avallone

*/s/ Chad Flores*
Chad Flores
Counsel for Appellants

## Notice of Panel Assignment

By order of the Court in this case's prior appeal, this appeal and any other "future requests for appellate relief shall be directed to the panel consisting of Judges JONES, ELROD, and HIGGINSON."  Order, *Defense Distributed v. Grewal*, No. 19-50723 (Sept. 11, 2020) (per curiam) (attached as Exhibit A).

## Statement Regarding Oral Argument

The Court should decide this case with the benefit of oral argument for the same reasons that it did so in *Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1736 (2021). The questions presented are of exceptional importance both in this particular case and for the jurisprudence going forward. State officials that ought to be governing only their home state are increasingly taking on the role of national law enforcers. More than ever before, these state officials are enforcing their home laws not just within their state's borders but beyond them—both in word and deed. Litigation about this dangerous new procedural phenomenon is exploding for a reason. *See, e.g.*, *Bulkley & Associates, L.L.C. v. Dep't of Indus. Relations, Div. of Occupational Safety & Health of the State of California*, No. 20-40020, 2021 WL 2374295, at *1 (5th Cir. June 10, 2021) ("In this case, a Texas company has twice sued a California state agency, arguing that the agency cannot enforce California regulations in Texas."). No matter the result, each step in the process of developing the Court's jurisprudence about how to handle such efforts should utilize the utmost care.

# Table of Contents

**Page**

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

Notice of Panel Assignment ......................................................................... iv

Statement Regarding Oral Argument ........................................................... v

Table of Contents ......................................................................................... vi

Table of Authorities ..................................................................................... ix

Jurisdictional Statement .............................................................................. 1

    I.    District court jurisdiction. .................................................................. 1

    II.   Appellate jurisdiction ......................................................................... 1

    III.  Alternative petition for a writ of mandamus. .................................. 2

Issues Presented ........................................................................................... 3

Statement of the Case ................................................................................... 4

    I.    Plaintiffs published digital firearms information. ............................ 4

        A.   In Texas, Defense Distributed freely published digital firearms information online. ...................................................... 4

        B.   In Texas, Defense Distributed freely published digital firearms information by mail. ...................................................... 5

        C.   In Texas, Defense Distributed freely published digital firearms information at a public library. ................................... 5

    II.   Grewal is censoring Defense Distributed's speech in Texas. ............. 6

        A.   Civil censorship is occurring. ...................................................... 6

        B.   Criminal censorship is occurring. ............................................. 7

III.    The State Department violated Defense Distributed and SAF's rights alongside Grewal.................................................... 10

    A.    *Defense Distributed I* ............................................... 10

    B.    The Settlement Agreement Resolved *Defense Distributed I* ... 13

    C.    Settlement Agreement Fulfillment Begins............................. 14

    D.    The State Department Stopped Fulfilling the Settlement Agreement Because of a Litigation Grewal brought. ............. 15

    E.    The State Department disavowed the license and Temporary Modification refused to supply new ones. ........... 19

    F.    The State Department failed to supply the required regulatory changes. ................................................ 20

    G.    The 2020 regulatory changes are enjoined and then revived.................................................................. 21

IV.    The district court granted Grewal's motion to dismiss for lack of personal jurisdiction; this Court reversed. ........................................ 22

V.    The district court severed the case against Grewal and transferred it to New Jersey. .......................................................... 22

    A.    The amended complaint sues Grewal and the State Department together for good reason. .................................... 22

SUMMARY OF THE ARGUMENT .................................................... 24

ARGUMENT........................................................................... 25

I.    The case against Grewal should not have been severed from the case against the State Department.................................................. 26

    A.    The district court abused its discretion by severing a necessary party to the case against the State Department........ 26

    B.    The district court abused its discretion under the Rule 21 factors.................................................................. 31

        1.    Judicial economy disfavors severance........................... 32

2.    The remaining Rule 21 factors disfavor a severance. ....................................................................... 38

II.    The district court abused its discretion in transferring the case against Grewal to New Jersey. ........................................... 42

A.    The private interest factors favor Texas................................. 43

1.    The key sources of proof are more easily accessible in Texas.......................................................................... 43

2.    Compulsory process to secure the attendance of non-party witnesses is largely unnecessary. ................. 46

3.    Litigation in New Jersey would create significant practical problems that do not exist in Texas. .............. 48

B.    The public interest factors favor Texas................................... 50

1.    The local interest in having this litigation decided in Texas strongly weighs against transfer.......................... 50

2.    Texas courts' familiarity with the case weighs strongly against transfer.................................................. 53

3.    The avoidance of conflict of laws weighs against transfer. ......................................................................... 55

Certificate of Service .................................................................................. 58

CERTIFICATE OF COMPLIANCE..................................................................... 59

# Table of Authorities

**Cases**                                                                                          **Page(s)**

*Acton Co., Inc. v. Bachman Foods, Inc.*,
    668 F.2d 76 (1st Cir. 1982) ................................................................. 37

*Advanced Display Techs. of Tex., LLC v. AU Optronics Corp.*,
    2012 WL 12839376 (E.D. Tex. Mar. 27, 2012) ................................ 52

*Aetna Cas. & Sur. Co. v. Hillman*,
    796 F.2d 770 (5th Cir. 1986) ............................................................. 34

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020) ......................................................... 59

*Baker v. Washington Nat'l Ins. Co.*,
    A-12-CA-260-SS, 2012 WL 12850254 (W.D. Tex. Sept. 7, 2012) ................. 56

*Balboa v. Metso Minerals Indus., Inc.*,
    2019 WL 8888170 (E.D. La. Jan. 2, 2019) ....................................... 34

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ............................................................................. 8

*Barton v. C. R. Bard, Inc.*,
    2:19-CV-181-Z, 2020 WL 1809702 (N.D. Tex. Apr. 9, 2020) ....................... 52

*Bernstein v. U.S. Dep't of State*,
    922 F. Supp. 1426 (N.D. Cal. 1996) .................................................... 8

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
    928 F.2d 1509 (10th Cir. 1991) ......................................................... 32

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949) ............................................................................. 1

*Cooktek Induction Sys. v. I/O Controls Corp.*,
    2016 WL 4095547 (E.D. Tex. Aug. 2, 2016) .................................... 52

*Def. Distributed et al. v. Grewal*,
    3:19-cv-4753-AET-TBJ, Doc. 20 (D. N.J.) ...................................... 62

*Def. Distributed v. Att'y Gen. of New Jersey*,
972 F.3d 193 (3d Cir. 2020) .................................................. 4, 42, 62

*Def. Distributed v. Grewal*
364 F. Supp. 3d 681 (W.D. Tex. 2019) (Pitman, J.),
*rev'd and remanded*, 971 F.3d 485 (5th Cir. 2020),
*cert. denied*, 141 S. Ct. 1736 (2021).............................................. 42, 43

*Def. Distributed v. Grewal*
971 F.3d 485 (5th Cir. 2020) ..................................................... *passim*

*Def. Distributed v. U.S. Dep't of State*
121 F. Supp. 3d 680 (W.D. Tex. 2015) ........................... 8, 19, 42, 63

*Def. Distributed v. U.S. Dep't of State*
2015 WL 9267338, 838 F.3d 451 (5th Cir. 2016).............. 8, 17, 19, 42

*Def. Distributed v. U.S. Dep't of State*
No. 1:15-CV-372-RP, 2018 WL 9866515 (W.D. Tex.
Oct. 22, 2018) .................................................................. 17

*Def. Distributed v. United States Dep't of State*,
865 F.3d 211 (5th Cir. 2017) .................................... 17, 19, 42

*EEOC v. Faurecia Auto. Seating, LLC*,
2017 WL 4158624 (N.D. Miss. Sept. 19, 2017)......................... 55, 56

*Escamilla v. M2 Tech., Inc.*,
536 Fed. Appx. 417 (5th Cir. 2013) ................................. 33

*Garber v. Randell*,
477 F.2d 711 (2d Cir. 1973) ......................................... 1

*Garrett v. Hanson*,
429 F. Supp. 3d 311 (E.D. Tex. 2019)............................ 55

*Gorgeous Gals, LLC v. Hey Gorgeous! Spay & Wellness LLC*,
2016 WL 6775445 (W.D. Tex. Nov. 15, 2016)....................... 57

*Guedry v. Marino*,
164 F.R.D. 181 (E.D. La. 1995) ................................... 46, 48

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ........................................................ 50

*Hammers v. Mayea-Chang*,
  2019 WL 6728446 (E.D. Tex. Dec. 11, 2019) ...................... 51, 52, 53

*Healthpoint v. Derma Scis.*,
  939 F. Supp. 2d 680 (W.D. Tex. 2013) ........................... 60, 63

*J2 Glob. Communications, Inc. v. Protus IP Sols.*,
  2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ...................... 56

*Junger v. Daley*,
  209 F.3d 481 (6th Cir. 2000) ........................................ 8

*Kuster v. W. Digital Techs., Inc.*,
  6-20-CV-00563-ADA, 2021 WL 466147 (W.D. Tex. Feb. 9, 2021) ............... 56

*Levy v. City of Rio Grande City*,
  2004 WL 2847273 (N.D. Tex. Dec. 9, 2004) ...................... 56

*Liaw Su Teng v. Skaarup Shipping Corporation*,
  743 F.2d 1140 (5th Cir. 1984),
  *overruled on other grounds by*
  *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*,
  821 F.2d 1147 (5th Cir. 1987) ...................................... 40, 49

*Mann v. Mohr*,
  802 Fed. Appx. 871 (6th Cir. 2020) ............................... 39

*McBee v. Campbell County Det. Ctr.*,
  2018 WL 2046303 (6th Cir. Mar. 15, 2018) ...................... 39, 46, 49

*Moore v. Unit Tex. Drilling, LLC*,
  3:08-CV-2080-N, 2009 WL 10704741 (N.D. Tex. Nov. 17, 2009) ............... 55

*N.Y. Life Ins. Co. v. Deshotel*,
  142 F.3d 873 (5th Cir. 1998) ........................................ 47

*Newman-Green, Inc. v. Alfonzo-Larrain*,
  490 U.S. 826 (1989) ................................................ 34

xi

*PrevMED, Inc. v. MNM-1997, Inc.*,
    2015 WL 5771822 (N.D. Tex. Sept. 30, 2015) ................................................ 56

*Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*,
    2011 WL 13224919 (E.D. Tex. Jan. 12, 2011) ................................................. 55

*Pulitzer-Polster v. Pulitzer*,
    784 F.2d 1305 (5th Cir. 1986) ......................................................................... 37

*QR Spex, Inc. v. Motorola, Inc.*,
    507 F. Supp. 2d 650 (E.D. Tex. 2007)............................................................. 50

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ........................................................................... 50

*In re Rolls Royce Corp.*,
    775 F.3d 671 (5th Cir. 2014) ................................................................. *passim*

*In re Sepulvado*,
    707 F.3d 550 (5th Cir. 2013) ............................................................................. 1

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) .......................................................................................... 8

*Spiegelberg v. Collegiate Licensing Co.*,
    402 F. Supp. 2d 786 (S.D. Tex. 2005)............................................................. 60

*State of Washington et al. v. United States Department of State et al.*,
    No. 2:18-cv-1115-RSL (W.D. Wash.)........................................................ 17, 22

*Transdata, Inc. v. Tri-County Elec. Coop., Inc.*,
    2011 WL 13134895 (E.D. Tex. Aug. 18, 2011)................................... 55, 57, 58

*Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities, Inc.*,
    CIV.A. 10-1682, 2011 WL 197897 (E.D. La. Jan. 20, 2011) ........................... 52

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001) .............................................................................. 8

*In re Vistaprint Ltd*,
    628 F.3d 1342 (Fed. Cir. 2010) ....................................................................... 57

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .................................................. *passim*

*In re Volkswagen of America, Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) ........................................ 57

*Washington v. U.S. Dep't of State*
    318 F. Supp. 3d 1247 (W.D. Wash. 2018) ................ 11, 36
    420 F. Supp. 3d 1130 (W.D. Wash. 2019) ........................ 36

*Watson v. Fieldwood Energy Offshore, LLC*,
    181 F. Supp. 3d 402 (S.D. Tex. 2016) ............................... 59

*Williamson-Dickie Mfg. Co. v. M/V HEINRICH J*,
    762 F. Supp. 2d 1023 (S.D. Tex. 2011) ........................... 55

*Wsou Investmentsv. Microsoft*,
    2021 WL 1298935 (W.D. Tex. Apr. 7, 2021) ........... 52, 53

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*,
    982 F. Supp. 2d 714 (W.D. Tex. 2013) ........................... 59

**Statutes**

28 U.S.C.
    § 1331 ....................................................................................... 1
    § 1343 ....................................................................................... 1
    § 1404(a) ............................................................................... 50

N.J. Stat. 2C:39-9(*l*)2 ................................................... 13, 14

N.J. Stat 2C:43-6 .................................................................. 13

**Rules**

Fed. R. Civ. P. 19(a) ............................................................ 33

Fed. R. Civ. P. 19(a)(1)(B)(i) .................... 34, 35, 36, 38

Fed. R. Civ. P. 19(a)(1)(B)(ii) ....................................... 38

**Other Authorities**

15 Charles A. Wright & Arthur R. Miller et. al., Federal Practice &
      Procedure: Jurisdiction and Related Matters § 3855 (4th ed. West
      2021) ........................................................................................................... 1

7 Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal
      Practice and Procedure § 1653 (1986) .............................................. 46

Felicia R. Lee, *3-D Printed Gun Goes on Display at London Museum*,
      N.Y. Times, Sept. 16, 2013 ................................................................ 6

## Jurisdictional Statement

### I.    District court jurisdiction.

The district court had original jurisdiction because the complaint, ROA.1853, establishes that the action arises under the Constitution and laws of the United States, *see* 28 U.S.C. § 1331, and that the action is to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and statutes providing for equal rights of citizens or of all persons within the jurisdiction of the United States, *see* 28 U.S.C. § 1343.

### II.    Appellate jurisdiction

Appellate jurisdiction exists because the appellants timely filed a notice of appeal on April 20, 2021, ROA.2478, from the district court's decision of April 19, 2021, to sever the case against Grewal and transfer it to New Jersey, ROA.2461. That decision is appealable by virtue of the collateral order doctrine, *see generally Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), because (1) this appeal will conclusively determine the correctness of the severance and transfer decision, (2) the severance and transfer decision is separate from the action's merits, and (3) the severance and transfer decision is effectively unreviewable otherwise. *See In re Sepulvado*, 707 F.3d 550, 552 (5th Cir. 2013) (doctrine covers transfer orders); *Garber v. Randell*, 477 F.2d 711, 716 (2d Cir. 1973) (same for severance). As between this Court and the Third Circuit, jurisdiction lies only here in the Fifth Circuit. *See* 15 Charles A. Wright & Arthur R. Miller et. al., Federal Practice &

Procedure: Jurisdiction and Related Matters § 3855 (4th ed. West 2021) ("If the transfer was made from a district in one circuit to a district in another, only the court of appeals in the circuit of the transferor can review the decision.").

## III. Alternative petition for a writ of mandamus.

If and to the extent that appellate jurisdiction is lacking, Appellants request that the Court treat this filing as a petition for a writ of mandamus. Jurisdictionally, this Court's authority to review the district court's severance and transfer decision via mandamus is well-established. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308 (5th Cir. 2008) (en banc); *In re Rolls Royce Corp.*, 775 F.3d 671, 677 (5th Cir. 2014). Substantively, the arguments presented below show that the district court's decision to sever the case against Grewal and transfer it to New Jersey constitutes both reversible error for appellate purposes and an exceptional clear abuse of discretion for mandamus purposes. The Court therefore has both the jurisdictional authority and substantive reason to either (a) reverse the district court's decision as an exercise of the Court's appellate jurisdiction, or (b) issue a writ of mandamus against the district court's decision as an exercise of the Court's original jurisdiction.

**Issues Presented**

The overall question presented is whether Defense Distributed and SAF's case against Grewal should have been both severed from the case against the State Department and transferred to New Jersey. It entails two linked subsidiary issues:

1.  Whether, as a prerequisite to the transfer decision, Defense Distributed and SAF's case against Grewal should have been severed from the case against the State Department.

2.  Whether, assuming that severance was correct, Defense Distributed and SAF's case against Grewal should have been transferred to New Jersey.

## Statement of the Case

### I.    Plaintiffs published digital firearms information.

Plaintiff Defense Distributed is a Texas company that exists to promote the Second Amendment's individual right to keep and bear Arms.  *See* ROA.1857 (complaint).  To that end, Defense Distributed authors and publishes a wide variety of digital firearms information.  ROA.1857.  Its publications address a variety of individual firearm components, as well as a complete single-shot firearm known as the "Liberator."   ROA.1867.   Defense Distributed also collects, revises, and republishes digital firearms information authored by others.  ROA.1867.  Cody Wilson founded Defense Distributed.  ROA.1857, 3799.

Plaintiff Second Amendment Foundation, Inc. ("SAF") is a nationwide non-profit membership organization that promotes the right to keep and bear arms by researching, educating, publishing, and litigating about the constitutional right to privately own and possess firearms and gun control's consequences.  ROA.1857. Across the nation and in New Jersey, certain of SAF's members seek to receive the digital firearms information that Defense Distributed publishes, to publish their own digital firearms information by utilizing Defense Distributed's facilities, and to republish digital firearms information files independently.  ROA.1857.

#### A.    In Texas, Defense Distributed freely published digital firearms information online.

Before Gurbir Grewal came onto the scene, Defense Distributed published digital firearms information to the internet's public domain on multiple occasions. ROA.1864 (complaint). On each occasion, Defense Distributed did so by publishing files to its defcad.org and defcad.com websites (collectively "DEFCAD") and letting visitors freely download them. One such publication period lasted from December 2012 to May. ROA.1866, 3801, 3730. Another such period lasted from July 27 to July 31, 2018. ROA.1866, 3801, 3730. Millions of downloads occurred during these DEFCAD publication periods. ROA.1867.

**B. In Texas, Defense Distributed freely published digital firearms information by mail.**

Defense Distributed also published digital firearms information via the mail. ROA.1868, 3805. From late August 2018 through early November 2018, Defense Distributed did so by storing its digital firearms information on USB drives and SD cards, selling them to customers online via DEFCAD, and shipping the USB drives and SD cards to purchasers via the United States Postal Service. ROA.1868, 3805.

**C. In Texas, Defense Distributed freely published digital firearms information at a public library.**

Furthermore, Defense Distributed published its digital firearms information by hosting the files at a brick-and-mortar public library in digital formats that patrons can access via computer workstations. ROA.1868. The public library housing Defense Distributed's publications is in Austin, Texas. ROA.1868.

Because of these prior publications, Defense Distributed's files will exist online forever.  Without coordination, the recipients of Defense Distributed's digital firearms information are persistently republishing the files at countless websites for free download.  ROA.1870.  The republished files are not, as one judge errantly concluded, hidden in "dark or remote recesses of the internet."[1]  Simple Google searches yield the republished Defense Distributed files with ease, ROA.1870, and always will.  This bell cannot be unrung.

## II.    Grewal is censoring Defense Distributed's speech in Texas.

### A.    Civil censorship is occurring.

Beginning in July 2018, Grewal has acted under the color of state *civil* laws to censor the publication of digital firearms information.  He issued a cease-and-desist letter expressly censoring Defense Distributed, sued Defense Distributed in court, and threatened Defense Distributed's third-party service providers—all in an effort to stop the exchange of digital firearms information that Defense Distributed initiates in Texas.

A formal cease-and-desist letter began the civil campaign on July 26, 2018. ROA.1890-92.  Issued by Grewal to Defense Distributed, that letter announced that publishing digital firearms information on the internet violated New Jersey's "public nuisance and negligence laws."    ROA.1890-92.    Grewal threatened Defense

---

[1] *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1262 (W.D. Wash. 2018).

Distributed to stop publishing or else: "If you do not halt your efforts to proceed with publication, I will bring legal action against your company. . . ." ROA.1890-92.

Internet service providers were another of Grewal's target. Under the guise of "public nuisance" law, Grewal sent letters to Defense Distributed's internet hosting provider, Dreamhost, and to its internet security provider, Cloudflare. ROA.1890-92. These letters urged—by way of threats, coercion, and intimidation—Dreamhost and Cloudflare to terminate their contracts with Defense Distributed. ROA.1890-92.

Grewal's combination of censorship measures is not happenstance. His own press releases touted this litany of enforcement actions as a coordinated effort to stop the free exchange of digital firearms information. ROA.2638 (Grewal's press release). The cease-and-desist letters, the intimidation of service providers, and the civil lawsuits are all part of the Grewal's unified plan to stop Defense Distributed "from publicly releasing computer files." ROA.2638.

## B.    Criminal censorship is occurring.

In the wake of DEFCAD's most recent online publications, New Jersey armed Attorney General Gurbir Grewal with Senate Bill 2465's Section 3(*l*)2. S.B. 2465, 218th Leg., Reg. Sess. (N.J. Nov. 2018) (codified as N.J. Stat. 2C:39-9(*l*)2)). The law is codified as Section (*l*)(2) of New Jersey Code of Criminal Justice 2C:39-9.

Section (*l*)(2) is a speech crime. It outlaws the sharing of digital firearms information. With Grewal as its prime enforcer, Section (*l*)(2) criminalizes constitutionally protected speech that Plaintiffs would engage in but for Grewal's enforcement threats. Calling Section (*l*)(2) his favorite new "tool," Grewal aims to jail Defense Distributed, SAF, and anyone else that dares to exercise their right to share digital firearms information.

The threat posed by Section (*l*)(2) is not merely facial. Grewal backed it up at Senate Bill 2465's publicized enactment ceremony. ROA.1892-1897. At that event, Grewal expressly aimed the new speech crime at Defense Distributed and its supporters. He said that Section (*l*)(2) met his demand for "stronger tools to stop them"—those sharing digital firearms information—because "a Texan named Cody Wilson," Defense Distributed, and its supporters were "not relenting" and "still trying to release these codes online." ROA.1892-1897. He said that the Section (*l*)(2) speech crime exists "to stop the next Cody Wilson - to fight the ghost gun industry." ROA.1892-1897. He promised to prosecute "anyone who is contemplating making a printable gun" and "the next ghost gun company." ROA.610. To Defense Distributed and anyone else across the political aisle who dares to share digital firearms information, Gurbir Grewal promises this: "***we will come after you***." ROA.610 (emphasis added).

To this day, Grewal's unconstitutional enforcement threats remain in force. The cease-and-desist letter Grewal issued to Defense Distributed has never been disclaimed. The coercive actions Grewal took against Defense Distributed's service providers have never been disclaimed. The civil lawsuits Grewal filed against Defense Distributed, its founder Cody Wilson, SAF, and others have never been disclaimed. The unequivocal threats Grewal's issued at the SB 2465 signing ceremony—to "stop" speakers from "releas[ing] these codes online" and to "come after you"—have never been disclaimed. If Defense Distributed or a SAF member were to publish the computer files at issue, Grewal "*will come after*" them with every tool at his disposal. ROA.610 (emphasis added).

The civil legal actions that Grewal wields against Plaintiffs are plainly unconstitutional. So is the speech crime that Grewal threatens to enforce against Plaintiffs. In each of these respects, Grewal has violated and is threatening to violate 42 U.S.C. § 1983 by acting, under color of state law, to deprive the Defense Distributed and SAF of rights, privileges, immunities secured by the Constitution and laws of the United States. And in each of these respects, Grewal has done so by choosing to reach out beyond New Jersey's borders and use his legal authority to censor speech that is occurring in Texas, about Texas activities, and to and from Texas residents.

## III. The State Department violated Defense Distributed and SAF's rights alongside Grewal.

### A. *Defense Distributed I*

"*Defense Distributed I*" refers to a federal civil action docketed in the United States District Court for the Western District of Texas, Austin Division as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 1:15-CV-372-RP (W.D. Tex.), and in the United States Court of Appeals for the Fifth Circuit first as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 15-50759 (5th Cir.) and later as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 18-50811 (W.D. Tex.). *Defense Distributed I* yielded the following reported opinions:

> *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015)
> *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451 (5th Cir. 2016) (panel opinion)
> *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 461–76 (Jones, J., dissenting)
> *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211 (5th Cir. 2017) (Elrod, Jones, Smith and Clement, JJ., dissenting from the denial of rehearing en banc)
> *Def. Distributed v. United States Dep't of State*, 947 F.3d 870 (5th Cir. 2020).

The plaintiffs in *Defense Distributed I* were Defense Distributed, SAF, and an individual SAF member, Conn Williamson. The defendants matched the defendants in this case: the United States Department of State, the Secretary of State, the State Department's Directorate of Defense Trade Controls, the Acting Deputy Assistant Secretary of State for Defense Trade Controls in the Bureau of Political-Military

Affairs, and the Acting Director of the Office of Defense Trade Controls Policy Division. They are referred to collectively as "the State Department."

*Defense Distributed I* concerned four categories of computer files defined by that action's pleadings: the "Published Files," the "Ghost Gunner Files," "CAD Files," and the "Other Files." *See* ROA.1874-75. Together, these are referred to as the "*Defense Distributed I* Files."

*Defense Distributed I* began after the State Department used the Arms Export Control Act of 1976, 22 U.S.C. ch. 22 (the "AECA"), and its primary implementing regulations, the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130 ("ITAR"), to impose an illegal prior restraint on public speech concerning technical firearms data, including the *Defense Distributed I* Files. *See* ROA.1875. Under this regime, the State Department required that Defense Distributed obtain prior United States government approval before publication of the *Defense Distributed I* Files could occur on the internet and at other public venues. *See* ROA.1875.

The *Defense Distributed I* plaintiffs challenged the legality of the State Department's enforcement of the AECA/ITAR regime vis-à-vis the *Defense Distributed I* Files. ROA.1875-76. In particular, they challenged the State Department's governance of the *Defense Distributed I* Files as ultra vires action not authorized by the laws at issue, and as violations of the First, Second, and Fifth Amendments of the Constitution. ROA.1875-76.

At a preliminary stage, the district court in *Defense Distributed I* denied the *Defense Distributed I* plaintiffs' motion for a preliminary injunction. *Def. Distributed v. Dep't of State*, 121 F. Supp.3d 680 (W.D. Tex. 2015). An interlocutory appeal of the *Defense Distributed I* preliminary injunction denial was taken to the Fifth Circuit. A divided Fifth Circuit panel affirmed the district court's decision. *Def. Distributed v. United States Dep't of State*, 838 F.3d 451 (5th Cir. 2016). But it declined to reach the merits, ruling solely based on "the balance of harm and the public interest." *Id.* at 461.

The merits of *Defense Distributed I*'s preliminary injunction were, however, reached by two important opinions. Judge Jones emphasized the protected nature of this speech in a panel dissent: "the State Department's application of its 'export' control regulations to this domestic Internet posting appears to violate the governing statute, represents an irrational interpretation of the regulations, and violates the First Amendment as a content-based regulation and a prior restraint." *Id.* at 463–64. (Jones, J. dissenting). The judges dissenting from the denial of rehearing en banc also reached the merits. *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211 (5th Cir. 2017). Their opinion explained that the lower court's "flawed preliminary injunction analysis permits perhaps the most egregious deprivation of First Amendment rights possible: a content based prior restraint." *Id.* at 212.

### B.    The Settlement Agreement Resolved *Defense Distributed I*

After the *Defense Distributed I* interlocutory appeal concluded, the district court in *Defense Distributed I* ordered the parties to engage in settlement negotiations. ROA.1876. The parties did so successfully and settled their dispute by agreement. ROA.1876.

The *Defense Distributed I* settlement amounted to a victory for the plaintiffs. ROA.1877. Press reports correctly understood that the State Department's decision to settle "essentially surrenders" to the constitutional challenge Defense Distributed and SAF had been pressing all along; that the settlement "promises to change the export control rules surrounding any firearm below .50 caliber – with a few exceptions like fully automatic weapons and rare gun designs that use caseless ammunition – and move their regulation to the Commerce Department, which won't try to police technical data about the guns posted on the internet"; and that, in the meantime, the settlement "gives [Defense Distributed] a unique license to publish data about those weapons anywhere [it] chooses." Andy Greenberg, *A Landmark Legal Shift Opens Pandora's Box for DIY Guns*, Wired Magazine (July 18, 2018), available at https://bit.ly/2QK3is6.

The Settlement Agreement binds all of the parties to *Defense Distributed I* and all of this action's parties. ROA.1876-1880. Settlement Agreement paragraph 7 provides that the "Settlement Agreement" shall be binding upon and inure to the

benefit of Plaintiffs and Defendants, and the respective heirs, executors, successors, assigns and personal representatives, including any persons, entities, departments or agencies succeeding to the interest of obligations of the Parties."

### C.     Settlement Agreement Fulfillment Begins

After the Settlement Agreement's execution, the State Department began to fulfill—temporarily—certain of its Settlement Agreement obligations.  So on June 29, 2018, the parties to *Defense Distributed I* filed a joint stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  *See* ROA.1881.  The filing provided as follows: "Pursuant to Federal Rule of Civil Procedure 41 (a)( I )(A)(ii) and 41(a)( I )(B), and a settlement agreement among Plaintiffs (Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson) and Defendants (the United States Department of State, the Secretary of State, the Directorate of Defense Trade Controls, the Deputy Assistant Secretary, Defense Trade Controls. and the Director, Office of Defense Trade Controls Policy), the Plaintiffs and the Defendants hereby stipulate to the dismissal with prejudice of this action."  *See* ROA.1881.  On July 30, 2018, the *Defense Distributed I* district court entered an order providing that "the case is **DISMISSED WITH PREJUDICE**" and the "action is **CLOSED**."  *See* ROA.1881.

The State Department's temporary fulfillment of the Settlement Agreement obligations lasted from July 27, 2018 until the afternoon of July 31, 2018. ROA.1882. During that period, Defense Distributed engaged in the publication addressed above ("Defense Distributed's July 2018 Publications"). ROA.1882.

### D. The State Department Stopped Fulfilling the Settlement Agreement Because of a Litigation Grewal brought.

On July 30, 2018—*after* Grewal had issued his cease-and-desist letter's censorship command to Defense Distributed and *after* Defense Distributed and SAF and sued Grewal for it in the instant action—Grewal and a group of state attorneys general (hereinafter "the States") initiated a civil action against the State Department, Defense Distributed, SAF, and Conn Williamson. ROA.1882. The States chose to sue in their forum of choice, the Western District of Washington's Seattle division, before Judge Robert Lasnik. ROA.1882. The suit was docketed in the district court as *State of Washington et al., v. United States Department of State et al.*, No. 2:18-cv-1115-RSL.

The States' *Washington* complaint alleged that, by issuing a Temporary Modification and license, the State Department had violated the Administrative Procedure Act (APA). ROA.1882. The suit sought a preliminary nationwide injunction and a final judgment vacating the Temporary Modification and license. ROA.1882. These claims went against the State Department alone. ROA.1882.

15

On August 27, 2018, the States obtained from the United States District Court for the Western District of Washington a preliminary injunction against the State Department: "The federal defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued until further order of the Court." *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1264 (W.D. Wash. 2018).

Even though the State Department had a right to appeal the *Washington* case's preliminary injunction decision, and even though it had preserved arguments that would have succeeded in having the district court's judgment vacated or reversed, the State Department refused to appeal. ROA.1884. It let the deadline for that interlocutory appeal come and go without taking any appellate action. ROA.1884. The State Department refused to appeal this preliminary injunction because of partisan politics and in spite of federal legal advisors that deemed an appeal legally necessary. ROA.1884.

The rest of the *Washington* case's key decisions occurred on summary judgment. On the merits, the *Washington* district court accepted both of the States'

APA claims.  First, the *Washington* district court held that the State Department's issuance of the Temporary Modification was "without observance of procedure required by law," 5 U.S.C. § 706, because a Congressional notice requirement had not been met.  *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1141-43 (W.D. Wash. 2019).   Second, the *Washington* district court held that the State Department's issuance of both the Temporary Modification and the license were "arbitrary and capricious," 5 U.S.C. § 706, because of insufficient explanation and evidentiary support in the administrative record.  *Id.* at 1144-47.  Neither of these claims are meritorious.

The *Washington* action's final judgment orders as follows: "The July 27, 2018, 'Temporary Modification of Category I of the United States Munitions List' and letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation were unlawful and are hereby VACATED."  Part of the *Washington* district court's decision addressed the First Amendment implications of vacating the Temporary Modification and license.  It held the Constitution's First Amendment was "not relevant to the merits": "Whether or not the First Amendment precludes the federal government from regulating the publication of technical data under the authority granted by the AECA is not relevant to the merits of the APA claims plaintiffs assert in this litigation."  *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1147 (W.D. Wash. 2019).  It also held that the First Amendment can be

17

"abridged" so long as it is not "abrogated."  *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1264 (W.D. Wash. 2018).

Defense Distributed and SAF demanded that the State Department appeal. ROA.1885.  The demand asserted that a failure to appeal constituted a breach of the Settlement Agreement.  ROA.1885.  The demand occurred in a January 15, 2020, letter from counsel for Defense Distributed and SAF to the State Department. ROA.1885.

Even though the State Department had a right to appeal the final judgment, and even though it had preserved arguments that would have succeeded in having the district court's judgment vacated or reversed, the State Department refused to appeal.  ROA.1885-1886.  It let the deadline for that appeal come and go without taking any action.  .  ROA.1885-1886.  The State Department refused to appeal this final injunction because of partisan politics and in spite of federal legal advisors that deemed an appeal legally necessary.  ROA.1885-1886.

Defense Distributed and SAF appealed the *Washington* action's final judgment.  ROA.1886.  Defense Distributed's appellant's brief showed that the district court both lacked subject-matter jurisdiction because of multiple Article III shortcomings and was wrong on the merits because the APA cannot require abridgement of the First Amendment.  ROA.1885-1886.  So rather than be squarely defeated, Grewal moved to dismiss both appeals as moot.  ROA.1885-1886.

18

Defense Distributed and SAF responded jointly, opposing the dismissal request with several categories of argument. ROA.1885-1886. First, the response defeated Grewal mootness suggestion on its own terms. ROA.1885-1886. Second, it showed that mootness-based dismissals cannot occur unless and until disputes regarding the district court's subject-matter jurisdiction are resolved. ROA.1885-1886. Third, the response showed that, if the case were moot, *Munsingwear* required vacatur of the district court's judgment. ROA.1885-1886.

The *Washington* action's Ninth Circuit panel accepted the mootness suggestion and dismissed the appeal. *See* Compl. at 34, ¶ 109. *Washington v. Def. Distributed*, No. 20-35030, 2020 WL 4332902 (9th Cir. July 21, 2020). Its order gives no meaningful indication of the mootness reasoning. It says nothing about the district court's jurisdiction. And it says nothing about *Munsingwear*, silently leaving the district court's judgment intact.

### E.    The State Department disavowed the license and Temporary Modification refused to supply new ones.

On or before August 2, 2018, the State Department disavowed the license it had originally issued to Defense Distributed and SAF in July 2018 and the Temporary Modification that it had originally issued in July 2018. ROA.1886-1887. And after disavowal, the State Department both refused to supply Defense Distributed and SAF with the license that Settlement Agreement Paragraph 1(c) requires the State Department to supply, ROA.1887, and refused to supply Defense

Distributed and SAF with the temporary modification that Settlement Agreement Paragraph 1(b) requires the State Department to supply.  ROA.1889.

### F.    The State Department failed to supply the required regulatory changes.

The State Department refused to supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply.  ROA.1889-1890.  Instead,  the State Department issued a new final rule that pertains to the Settlement Agreement in January 2020—far after the litigation in *Washington* had done its harm.  *See* International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III, 85 Fed. Reg. 3819 (Jan. 23, 2020).  It did so in conjunction with a new rule issued by the Commerce Department.  *See* Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).

The regulations promulgated in 2020 by the State and Commerce Departments change the treatment of so-called "3D-printed guns and their associated electronic files," shifting them from the State Department's regime of prior restraints, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130, to a different regime at the Commerce Department, the Export Administration Regulations ("EAR"), 15 C.F.R. ch. IV, subch. C.  These new rules do *not* fully discharge the State Department's obligations under Settlement

Agreement Paragraph 1(a) because they do not exclude *all* of the technical data that was the subject of *Defense Distributed I* from United States Munitions List ("USML") Category I. ROA.1889-1990. They go part of the way towards satisfying the Settlement Agreement, but not all of the way. So on April 29, 2020, Defense Distributed and SAF demanded that the State Department supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply. ROA.1890.

### G. The 2020 regulatory changes are enjoined and then revived.

The 2020 regulatory changes did *not* take hold at first. Right after promulgation, a federal court in Seattle preliminarily enjoined the 2020 regulatory changes, halting the regime change. *See Washington v. United States Dep't of State*, 443 F. Supp. 3d 1245 (W.D. Wash. 2020). But the State Department appealed, seeking to defend the 2020 regulatory changes and have them take effect to provide (in part) the cover it promised Defense Distributed in the Settlement Agreement.

On April 27, the State Department won the appeal in full. In *State of Washington v. United States Department of State*, No 20-35391, 2021 WL 1621320 (9th Cir. Apr. 27, 2021), the Ninth Circuit held that its lower court lacked jurisdiction to enjoin the 2020 regulatory changes and vacated the injunction. *Id.* at 2. Defense Distributed & SAF sued Grewal in Texas.

21

IV. **The district court granted Grewal's motion to dismiss for lack of personal jurisdiction; this Court reversed.**

The instant action began in the United States District Court for the Western District of Texas on July 29, 2018. ROA.18. Defense Distributed and SAF are the plaintiffs. ROA.126. The original Defendants were Grewal and other states' officials. ROA.127.

In proceedings that the Court is already familiar with, Grewal's first evasive maneuver was to seek dismissal for want of personal jurisdiction. Though the district court granted that relief, this Court reversed and remanded. *Def. Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020), cert. denied, 141 S. Ct. 1736 (2021) ("Based on well-established principles of personal jurisdiction, we conclude that Grewal is subject to the jurisdiction of Texas courts.").

V. **The district court severed the case against Grewal and transferred it to New Jersey.**

A. **The amended complaint sues Grewal and the State Department together for good reason.**

On remand, Defense Distributed and SAF amended the complaint to both (1) account for new facts about Grewal and (2) assert its claims against the State Department. ROA.1853.

Grewal instigated this appeal by filing a motion that asked the district court to both (1) sever the case against Grewal from the case against the State Department, and (2) transfer the severed case against Grewal to New Jersey. ROA.1999. The

State Department opposed this relief, ROA.2121, as did Plaintiffs, ROA.2095. Without holding a hearing, the district court granted the motion in full. ROA.2461. The decision simultaneously severed the case against Grewal from the case against the State Department and transferred the severed case against Grewal to New Jersey. ROA.2477. Plaintiffs timely appealed. ROA.2478.

The State Department is in retreat. As of June 9, 2021, the State Department says that it no longer regulates the files at issue in this litigation.[2]

Not Grewal, though. His censorship remains in full force, never relenting, causing more and more irreparable harm with every passing day.

---

[2] But that part of the case is not moot because the State Department still has to account for its past wrongdoing.

## SUMMARY OF THE ARGUMENT

Neither of the district court's holdings are sustainable. The decision to sever the case against Grewal from the case against the State Department constituted an extraordinary and clear abuse of discretion; and even if that were proper, the decision to transfer the case against Grewal constituted an extraordinary and clear abuse of discretion as well.

## ARGUMENT

The district court severed the claims against Grewal and transferred them to New Jersey pursuant to 28 U.S.C. § 1404(a). ROA.2464–65, 2471, 2476–77. Because this provision "only authorizes the transfer of an entire action, not individual claims," "[a] court acting under § 1404(a) may not transfer part of a case for one purpose while maintaining jurisdiction for another purpose." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991). Instead, "[w]hen transferring a portion of a pending action to another jurisdiction, district courts first must sever the action under Rule 21 before effectuating the transfer." *Id.* at 1519; *see also Rolls Royce*, 775 F.3d at 679–80.

The district court followed this procedure here, severing the claims against Grewal before transferring them to New Jersey. Because Grewal did not seek to transfer the *entire* case, including the claims against the State Department, to New Jersey, the severance order is a necessary prerequisite to the transfer order. Thus, without the severance, the district court could not effect a transfer. *See Chrysler Credit*, 928 F.2d at 1519. Accordingly, we begin with the district court's decision to sever the claims against Grewal and then address its decision to transfer those claims. If either decision constitutes an abuse of discretion, the case must be remanded in its entirety to the Western District of Texas for further proceedings.

## I.    The case against Grewal should not have been severed from the case against the State Department.

Rule 21 of the Federal Rules of Civil Procedure normally affords courts "wide discretion to sever a claim against a party into separate cases." *Rolls Royce*, <u>775 F.3d at 680</u>.  There are limits to that discretion, however, and the district court here exceeded them in at least two ways, each of which independently merits reversal.

### A.    The district court abused its discretion by severing a necessary party to the case against the State Department.

The most obvious limit on a district court's discretion to sever a party from a case is Rule 19.  Under this rule, certain parties "must be joined" to a lawsuit "if possible."  *Escamilla v. M2 Tech., Inc.*, <u>536 Fed. Appx. 417, 420</u> (5th Cir. 2013).  As relevant here, Rule 19 provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: . . .

>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or

>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

<u>Fed. R. Civ. P. 19(a)</u>.

Correspondingly, a district court may only sever "a nondiverse party *whose presence is not essential to the suit*" under Rule 19. *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 774 (5th Cir. 1986) (emphasis added); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("[I]t is well settled that Rule 21 invests district courts with authority to allow a *dispensable* nondiverse party to be dropped at any time.") (emphasis added). In other words, a district court "may not drop or sever the claim of a Rule 19 required party." *Balboa v. Metso Minerals Indus., Inc.*, 2019 WL 8888170, at *3 n.34 (E.D. La. Jan. 2, 2019).

Grewal is a required party in Plaintiffs' lawsuit against the State Department under both prongs of Rule 19(a)(1)(B). Accordingly, he cannot be severed.

Subsection (B)(i) requires joinder of a party if his "absence may . . . as a practical matter impair or impede the person's ability to protect [his] interest" in the underlying case. Fed. R. Civ. P. 19(a)(1)(B)(i). Grewal fits this description based on two interests he has claimed "relating to the subject of the action." *Id.*

First, throughout the *Washington I* litigation, Grewal staked out a legal interest in the State Department's fulfillment of its obligations under the Settlement Agreement. Specifically, Grewal argued that the Settlement Agreement would undermine his interest as Attorney General of the State of New Jersey in protecting New Jersians from the alleged dangers of speech on 3D-printed firearms.

Grewal claimed that interest most emphatically when he defended his standing to challenge the State Department's compliance with the Settlement Agreement. *See Washington I*, Dkt. No. 68 at 11. In the relevant filing, Grewal cited the state's "sovereign interests" in its "ability to enforce gun-possession laws," the "security of [New Jersey's] borders," and its "sovereign power and duty to protect public health and safety" as the basis for standing. *Id.* (emphasis added) (citations omitted). This claimed interest was consistent with Grewal's complaint, where he claimed that "[t]he security of the Plaintiff States is threatened by the Government's deregulation of CAD files for the automated production of 3-D printed weapons." *Id.*, Dkt. 1 ¶ 15.

Not only did Grewal expressly claim this interest in *Washington I*, he also successfully persuaded the district court there to *recognize it*, and on multiple occasions to boot. First, in issuing a preliminary injunction, the court held that the states "alleged harm to their legally protectable sovereign interests" based on the "domestic repercussions" of compliance with the Settlement Agreement. *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1255 (W.D. Wash. 2018).

The court put it more concisely in its summary judgment ruling, holding that the State Department's compliance with the Settlement Agreement implicated the states' "interests in curbing violence, assassinations, terrorist threats, aviation and

other security breaches, and violations of gun control laws within [its] borders." *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1140 (W.D. Wash. 2019).

Plaintiffs' claims against the State Department here implicate these interests just as much as the State Department's initial compliance efforts, which Grewal challenged in *Washington I*. If successful, Plaintiffs will be able to publish information on 3D-printed firearms free of State Department regulation, to the detriment of the very legal interest Grewal claimed in compelling such regulation in that case. Thus, Grewal's absence from this case would "as a practical matter impair or impede [his] ability to protect [that] interest." Fed. R. Civ. P. 19(a)(1)(B)(i).

Second, Plaintiffs claims against the State Department may also practically "impair or impede" Grewal's *own* claimed interest in regulating speech on 3D-printed firearms directly, an interest Grewal claimed publicly at the press conference announcing the enactment of Section 3(*l*)(2) and privately through the cease-and-desist letter. The impairment to this purported interest would come through "the establishment of negative precedent," which this Court has held "can provide the requisite prejudice to the absentee" to render them a required party under Rule 19. *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1310 (5th Cir. 1986).

For example, this Court may (and likely will) conclude that Plaintiffs' publications constitute "speech" under the First Amendment, that the State Department lacks of compelling interest in regulating that speech, and that the State

Department's regulations are not "narrowly tailored" to achieve any interest it claims. Then, "as a practical matter," courts in New Jersey will "undoubtedly consider and possibly respect any such federal ruling"—even though they are not bound by it—in deciding Plaintiffs' claims and the other inevitable challenges Grewal will encounter when he attempts to enforce Section 3(*l*)(2). In this way, too, "to proceed without [Grewal] might 'as a practical matter impair or impede' [his] ability to protect [his] interest in this matter," making him a "required party" under Rule 19. *Acton Co., Inc. v. Bachman Foods, Inc.*, 668 F.2d 76, 78–79 (1st Cir. 1982); *see also Pulitzer*, 784 F.2d at 1310 (reaching same conclusion).

Critically, the district court never addressed whether Grewal was a necessary party under the first prong of Rule 19(a)(1). *See* Fed. R. Civ. P. 19(a)(1)(B)(i). Instead, it held that Grewal "is not a necessary party to this action" solely because the State Department "offer[ed] no concrete examples" of "inconsistent obligations" that might be imposed on the State Department under the *second* prong of the Rule. ROA.2469; *see also* Fed. R. Civ. P. 19(a)(1)(B)(ii). But the Court's failure to address the obvious practical consequences that will arise for Grewal if this case proceeds without him is fatal to its holding that he is not a "necessary party." And because Grewal is a necessary party under subsection (B)(i), he cannot be severed as a matter of law, irrespective of whether he meets the test under subsection (B)(ii).

**B.     The district court abused its discretion under the Rule 21 factors.**

Even if Grewal were not a necessary party, the district court still abused its

discretion in severing him under Rule 21.   Although this Court "has not formally

adopted a severance test," the district courts in this Circuit "have settled on a

standard which accords with that used in other circuits," looking to five main factors:

> (1) whether the claims arise out of the same transaction or occurrence;
> (2) whether the claims present some common questions of law or fact;
> (3) whether settlement of the claims or judicial economy would be
> facilitated; (4) whether prejudice would be avoided if severance were
> granted; and (5) whether different witnesses and documentary proof are
> required for the separate claims.

*Rolls Royce*, 775 F.3d at 680 n.40; *accord, e.g.*, *Mann v. Mohr*, 802 Fed. Appx. 871,

875 (6th Cir. 2020).  In assessing these factors, a district court abuses its discretion

if it severs claims that "are all [properly] alleged to arise out of the same common

. . . transactions," and the plaintiff is "prejudiced by being required to pay for and

litigate these same issues in multiple suits." *McBee v. Campbell County Det. Ctr.*,

2018 WL 2046303, at *5 (6th Cir. Mar. 15, 2018).

When considering a severance-and-transfer motion like the one Grewal filed

here, however, this Court has held that the inquiry collapses into a single question

of the "relative merits of convenience versus judicial economy."  *Rolls Royce*, 775

F.3d at 680.  A court utilizing this approach "should not sever if the defendant over

whom jurisdiction is retained is so involved in the controversy to be transferred that

partial transfer would require the same issues to be litigated in two places."  *Id.*

(quoting *Liaw Su Teng v. Skaarup Shipping Corporation*, 743 F.2d 1140, 1148–49

(5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New*

*Orleans, La. on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987)).  The rationale behind

this rule is to prevent prejudice to the plaintiff and the public:

> Manifestly, the plaintiffs will suffer some inconvenience
> if they are forced to litigate their claims in two courts, half
> the world apart from each other, with not only the
> consequent added expense and inconvenience but also the
> possible detriment of inconsistent results. . . . The public
> also has an interest in facilitating a speedy and
> less-expensive determination in one forum of all of the
> issues arising out of one episode.

*Id.* (quoting same).

Here, the district court abused its discretion under either formulation of the

test.  Reversal is therefore warranted.

### 1.    Judicial economy disfavors severance.

The factor this Court has identified as dispositive in sever-and-transfer cases

defeats severance in the circumstances of this case.  *See id.*  As noted, the "judicial

economy" factor requires the court to deny a motion to sever "if the defendant over

whom jurisdiction is retained is so involved in the controversy to be transferred that

partial transfer would require the same issues to be litigated in two places."  *Id.*

(quoting *Liaw Su Teng*, 743 F.2d at 1148–49).

That is the case here.  The constitutional claims against Grewal and the State

Department are fundamentally the same, both turning on the same core issues like:

1. Do Plaintiffs' publications of information relating to 3D-printed firearms constitute "speech" under the First Amendment?

2. Has New Jersey or the State Department articulated a "compelling government interest" in banning that speech based on the need to prevent unlawful conduct by third parties?

3. Is Section 3(*l*)(2) or the ITAR regime as applied to Plaintiffs' speech narrowly tailored to achieve the alleged government interest?

4. Has New Jersey or the State Department adequately demonstrated that their respective regulations effectively advance that interest?

5. Is Section 3(*l*)(2) or the ITAR regime as applied to Plaintiffs' speech unconstitutionally overbroad?

*Compare* ROA.1912–22 (First Amendment, Second Amendment, and Due Process claims against State Department) *with* ROA.1922–28 (same claims against Grewal).

Thus, if the district court's severance-and-transfer order is allowed to stand, there is no question that the "partial transfer would require the same issues to be litigated in two places." *Rolls Royce*, 775 F.3d at 680. This alone required denial of Grewal's motion to sever, and the court abused its discretion in holding otherwise.

In addition to their substantial legal overlap, Plaintiffs' claims against both defendants stem from the same underlying set of facts: Plaintiffs' publications of information concerning 3D-printed firearms that Defendants' efforts would like to censor. The nature of the speech in question is highly technical, and Plaintiffs' efforts to defend it have been extensive and complex, complete with numerous, interrelated lawsuits across the country.

Both this Court and the district court have ample, longstanding experience with these dense factual issues, as reflected in numerous published decisions going back to at least 2015. *Compare, e.g.*, *Def. Distributed v. Grewal*, 971 F.3d 485, 488–89 (5th Cir. 2020) ("*Grewal II*"); *Def. Distributed v. Grewal*, 364 F. Supp. 3d 681, 685–86 (W.D. Tex. 2019) (Pitman, J.) ("*Grewal I*"), *rev'd and remanded*, 971 F.3d 485 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1736 (2021); *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211, 212–14 (5th Cir. 2017) ("*State Dept. III*") (Elrod, J., dissenting from denial of rehearing *en banc*); *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 454–56 (5th Cir. 2016) ("*State Dept. II*"); *id.* at 461–63 (Jones, J., dissenting); *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 686 (W.D. Tex. 2015) (Pitman, J.) ("*State Dept. I*"). This experience contrasts sharply with the New Jersey federal courts' studious avoidance of the substance of the case, whether legal or factual. *See Def. Distributed v. Att'y Gen. of New Jersey*, 972 F.3d 193, 196–97 (3d Cir. 2020). It would be a huge waste of both the parties' and the courts' resources to bring the New Jersey courts up to speed on these complex issues when Texas courts have already developed a detailed understanding of them.

The district court reached the opposite conclusion largely because it anticipates another personal jurisdiction battle on Plaintiffs' claim that Section 3(*l*)(2) amounts to an unconstitutional speech crime, a battle that would be avoided in New Jersey. ROA.2469–70. But this Court has already settled the issue.

In *Grewal II*, this Court held that Grewal's Rule 12 motion to dismiss for lack of personal jurisdiction should have been denied *in its entirety*. *See* 971 F.3d at 488. The Court rejected Grewal's jurisdictional arguments as to both his invocation of a common law nuisance tort *and* his attempt to enforce New Jersey's new speech crime against Plaintiffs.  No claim-by-claim distinction was made.

The district court reads this Court's personal jurisdiction holding more narrowly to cover only the claims stemming from Grewal's cease-and-desist letter. ROA.2469–70.  Although Plaintiffs had not formally pleaded their Section 3(*l*)(2) claims at the time the district court erroneously dismissed the case for lack of personal jurisdiction, Plaintiffs *had* by that time raised the speech crime issue in accordance with standard procedural rules.  Namely, they did so by way of their motion for a preliminary injunction, which expressly indicated that it contained "facts occurring after the complaint's filing, which should be accounted for even if pleadings need to be amended later." ROA.1332 n.1.  This tactic is a perfectly orthodox procedure to invoke, see Wright & Miller § 2949 & nn. 5-6, and when the Plaintiffs' motion for a preliminary injunction announced that they were doing so, no one objected.  Indeed, in holding that it lacked personal jurisdiction over Grewal, the district court expressly recognized that "the instant action concern[ed]" Grewal's "criminal enforcement actions," such as "threatening to enforce a criminal law against Defense Distributed."  364 F. Supp. 3d at 686.

More importantly, when it reversed the district court's decision, this Court also expressly recognized that Plaintiffs' claims encompassed the "criminal sanctions" that Grewal threatened "at a live press conference." *Grewal II*, 971 F.3d at 489.[3]  Correspondingly, contrary to the district court's narrow reading of that opinion, this Court's analysis was *not* limited to the cease-and-desist letter.  Quite the opposite, the Court specifically cited Grewal's threat to enforce Section 3(*l*)(2) against Defense Distributed as a minimum contact supporting personal jurisdiction:

> Grewal's conduct *beyond sending the cease-and-desist* letter confirms his intent to crush Defense Distributed's operations and not simply limit the dissemination of digital files in New Jersey. Grewal's enforcement actions are selective. He has not targeted the many similarly-situated persons who publish Defense Distributed's files on the internet. Instead, he has focused solely on Defense Distributed.  Perhaps nowhere is this better illustrated than in Grewal's efforts to enjoin the national distribution of Defense Distributed's files by suing in Washington, far from his or the plaintiffs' home state. *Grewal has also threatened Defense Distributed's founder, Cody Wilson, by name, promising to "come after" "anyone who is contemplating making a printable gun" and "the next ghost gun company."* Together, these actions confirm Grewal's intent to force Defense Distributed to close shop.

*Id.* at 493 (emphasis added).  This Court later emphasized that its holding stemmed from both the cease-and-desist letter and the "other actions [Grewal] took that, together, demonstrate his intent to gut Defense Distributed's operations and restrict Texans' access to Defense Distributed's materials."  *Id.* at 496 n.10.

---

[3] The underlying materials confirm that Section 3(*l*)(2) provides the sole legal basis for these threats.  *See* Br. of Appellants, *Grewal II*, 2019 WL 6457013 (C.A.5), 9–10.

In short, Grewal "projected himself across state lines and asserted a pseudo-national executive authority" through a series of actions, including threats to enforce Section 3(*l*)(2) against Defense Distributed, designed to silence the Plaintiffs. *Id.* at 493. Through these actions, "Grewal has established sufficient minimum contacts with Texas to subject him[self] to the jurisdiction of Texas's courts." *Id.* at 490; *see also id.* at 488 ("Based on well-established principles of personal jurisdiction, we conclude that Grewal is subject to the jurisdiction of Texas courts."); *id.* at 497 ("[J]urisdiction over Grewal is proper."). Thus, even if Grewal attempts to challenge personal jurisdiction a second time, this Court's holding in *Grewal II*—and any clarification of that holding here—will make short work of that challenge.

Apart from the phantom jurisdictional battle it anticipates, the district court also concluded that a severance "would likely promote judicial economy" because the claims against the State Department stemmed from its violation of the Settlement Agreement while the claims against Grewal stemmed from his efforts to enforce New Jersey law. ROA.2468. As explained above, however, the core factual allegations are identical: both Defendants are attempting to use government power to silence the same speech by Plaintiffs. The cases against both Defendants thus contain substantial legal and factual overlap, and it would conserve judicial resources to address them all in one fell swoop.

The fact that Plaintiffs have *additional* claims against the State Department does not suggest otherwise. *See Guedry v. Marino*, <u>164 F.R.D. 181, 184</u> (E.D. La. 1995) (joinder does not "require every question of law or fact in the action be common among the parties," only that there "be at least one common question of law or fact") (citing 7 Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1653, at 387 (1986)). Plaintiffs, the State Department, and the courts will expend the same resources on those additional claims *regardless* of where the claims against Grewal are litigated, and Grewal himself need not expend *any* resources on claims not related to him. Accordingly, waste will only arise if the substantively identical constitutional claims against Grewal are severed from those against the State Department, forcing Plaintiffs and the federal courts to duplicate their efforts across two circuits.

### 2.    The remaining Rule 21 factors disfavor a severance.

Beyond the "cardinal" issue of "judicial economy," courts evaluate four other factors in deciding a motion to sever: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; . . . (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Rolls Royce*, <u>775 F.3d at 680</u>–81 & n.40. Together, these factors also show that severance was improper here. *See McBee*, <u>2018 WL 2046303</u>, at *5.

*First*, to "arise out of the same transaction or occurrence," two claims need only bear a "logical relationship" to one another. *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 881–82 (5th Cir. 1998). Claims are "logically related" if they "share an aggregate of operative facts." *Id.* at 882.

Plaintiffs' claims against the State Department and Grewal plainly satisfy this test. As outlined above, they all stem from the same "aggregate of operative facts": Defense Distributed's publication of information concerning 3D-printed firearms and Defendants' efforts to restrict those publications. The only difference is the precise means the two Defendants have employed to accomplish their censorship—state law for Grewal and federal law for the State Department—a difference unlikely to affect the substantive analysis on the constitutional questions.

The contract claims against the State Department are also "logically related" to the claims against Grewal. The impetus for the State Department's breach was Grewal's initiation of *Washington I*, through which he obtained an injunction nullifying the State Department's first attempt to comply with the Settlement Agreement. ROA.1882–90, 1910–12. This same conduct also provides the factual basis for Plaintiffs' tortious interference claim against Grewal. *See* ROA.1882–83, 1932–33. As such, both that claim and the breach of contract claim against the State Department require proof of the same breach by the State Department. This makes them "logically related." *See Deshotel*, 142 F.3d at 881–82.

Repeating the same error it made in connection with the "judicial economy" factor, the district court concluded that the claims did not arise from the same transaction or occurrence because the "claims against [Grewal] largely stem from the 2018 cease-and-desist letter, and other comments made by [Grewal]" whereas the claims against the State Department stem from the Settlement Agreement. ROA.2467.  This is a distinction without a difference.

 **Second**, for similar reasons, the claims against both Defendants "present some common questions of law or fact." *Rolls Royce*, 775 F.3d at 680 n.40.  Given the extensive overlap between the legal and factual issues between the claims, this factor strongly disfavors severance.

The district court held that this factor favored a transfer only by misreading it, reasoning that the "common issues of fact and law" between the claims did not "council against severance" because, although "many of Plaintiffs' claims involve the legal question of whether Defense Distributed's actions are protected by the First Amendment, this is not the case for *all* of Plaintiffs' claims." ROA.2468 (emphasis in original).  But this misstates the test.  Only "some" of the claims need to overlap for this factor to disfavor severance.  *Rolls Royce*, 775 F.3d at 680 n.40; *see also Guedry*, 164 F.R.D. at 184.  That is the case here.

**Third**, "prejudice would [not] be avoided if [the] severance" is upheld. *Rolls Royce*, 775 F.3d at 680 n.40. On the contrary, the severance will *cause* prejudice by forcing Plaintiffs "to litigate their claims in two courts, half the world apart from each other, with not only the consequent added expense and inconvenience but also the possible detriment of inconsistent results." *Id.* at 681 (quoting *Liaw Su Teng*, 743 F.2d at 1148–49). Indeed, it is an abuse of discretion to compel Plaintiffs to litigate the same constitutional and factual issues in two separate forums where the substance is materially indistinguishable. *McBee*, 2018 WL 2046303, at *5.[4]

**Finally**, the last factor—"whether different witnesses and documentary proof are required for the separate claims," *Rolls Royce*, 775 F.3d at 680 n.40—is neutral. On the one hand, the evidence regarding the precise form of the censorship will differ between the Defendants. ROA.2468–69. But on the other, the proof concerning the nature of Plaintiffs' speech and the harm from the Defendants' regulatory efforts will all stem from the same evidence Plaintiffs will supply, such as evidence on how their files work, the scientific, artistic, technical, and social value of those files, and the harms Plaintiffs are experiencing from Defendants' censorship. The offsetting sources of proof from each side of the case render this last factor neutral.

---

[4] The district court's contrary holding turned once again on its erroneous assumption that the parties will expend substantial resources on a jurisdictional fight. ROA.2470–71.

In sum, four of the five Rule 21 factors counsel against severance, and the last one is neutral. Under these circumstances, the district court abused its discretion in severing the claims against Grewal.

## II. The district court abused its discretion in transferring the case against Grewal to New Jersey.

Even if severance was proper, transfer was not. To obtain a transfer under Section 1404(a), the party seeking it "must show good cause" by "*clearly demonstrat[ing]* that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (quoting 28 U.S.C. § 1404(a)) (emphasis added). This is a "heavy burden," *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 664 (E.D. Tex. 2007), meant to "reflect[] the appropriate deference to which the plaintiff's choice of venue is entitled," *Volkswagen*, 545 F.3d at 315.

In determining whether the moving party has demonstrated "good cause" for a transfer, the Court examines "the [eight] private and public interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)." *Volkswagen*, 545 F.3d at 315 No single factor carries "dispositive weight," but if the balance between them shows that "the transferee venue is *not clearly more convenient* than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*; *see, e.g.*, *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (burden satisfied where no factors weighed against transfer and three favored or strongly favored transfer).

Here, Grewal failed to demonstrate that New Jersey "is clearly more convenient" than Texas for resolving Plaintiffs' claims against him. *Volkswagen*, 545 F.3d at 315. Indeed, *none* of the private or public interest factors favor a transfer, and most of them cut the other way. As such, Plaintiffs' choice of venue "should be respected," and the district court's transfer order should be reversed. *Id.*

## A.    The private interest factors favor Texas.

The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The district court held that the first and third of these factors were neutral while the second and fourth favored New Jersey. ROA.2474–76. The court was correct only with respect to the third factor. The rest favor Texas.

### 1.    The key sources of proof are more easily accessible in Texas.

In assessing "the relative ease of access to sources of proof" across the two forums, "courts consider the location of documents and physical evidence" rather than witnesses. *Hammers v. Mayea-Chang*, 2019 WL 6728446, at *6 (E.D. Tex. Dec. 11, 2019) (citing *Volkswagen*, 545 F.3d at 316). Consistent with its overarching burden, the movant must "show that transfer will result in more convenient access to specifically-identified and material sources of proof" under this factor. *Id.* at *7.

A moving party cannot meet this subsidiary burden, however, "when it merely offers generalized statements that do not specify the format, relevance, or identity of particular documents or physical evidence." *Id.* Instead, it "must indicate with particularity the identity and format of the sources of proof," "explain the role of such proof at trial," and "show that the sources of proof are substantially noncumulative of other evidence which will be presented at trial." *Id.* at *8. If the movant fails to do so, it "will render this factor neutral." *Id.*[5]

On the other hand, if the *non-movant* demonstrates that sources of proof are more readily accessible in the initial forum of suit, this factor counsels against a transfer. *See, e.g.*, *Barton v. C. R. Bard, Inc.*, 2:19-CV-181-Z, 2020 WL 1809702, at *3 (N.D. Tex. Apr. 9, 2020); *Advanced Display Techs. of Tex., LLC v. AU Optronics Corp.*, 2012 WL 12839376, at *3 (E.D. Tex. Mar. 27, 2012); *Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities, Inc.*, CIV.A. 10-1682, 2011 WL 197897, at *4 (E.D. La. Jan. 20, 2011). And where a defendant moves to transfer venue, "some weight must still be given to [the] location of the plaintiff's documents." *Wsou Investments v. Microsoft*, 2021 WL 1298935, at *3 (W.D. Tex. Apr. 7, 2021).

Under these standards, the first private interest factor favors Texas. Although Plaintiffs, as non-movants, bore no burden to establish Texas as the more convenient

---

[5] Likewise, "where evidence is dispersed across venues, this private interest factor will be neutral." *Cooktek Induction Sys. v. I/O Controls Corp.*, 2016 WL 4095547, at *4 (E.D. Tex. Aug. 2, 2016).

forum, their complaint and preliminary injunction briefing demonstrate that the bulk of the documentary and electronic evidence relating to the information they published (and wish publish) is based in Texas. *See* ROA.1332–37, 1857, 1868.[6]

Grewal, by contrast, "did not specifically identify the type of documents or the format of their storage (e.g. electronic or physical)" as required to meet his burden under the first private interest factor. ROA.2475. The district court concluded from this that this factor was "neutral." *Id.* In doing so, however, it explicitly refused to afford any "weight" to the "location of [Plaintiffs'] documents" or evidence, *Wsou*, 2021 WL 1298935, at *3, on the ground that Plaintiffs' "decision to initiate a lawsuit in New Jersey against [Grewal] belies any assertion that they will suffer prejudice in presenting evidence there," ROA.2475. This was error.

The first private interest factor does not ask whether a transfer would "prejudice" the non-moving party but which forum provides easier access to sources of proof. *Volkswagen*, 545 F.3d at 315. On this record, the bulk of the specific proof identified below is located in Texas. Indeed, the district court merely assumed "that

---

[6] For example, "most of Defense Distributed's activities, including research, design, development, manufacturing, and publishing occurred in and around Austin," and "Defense Distributed also published the same computer files with digital firearms information at a brick-and-mortar public library in Austin, Texas by hosting the computer files in formats that patrons could access via computer workstations." ROA. 1857, 1868. The computer servers on which Defense Distributed hosts these files for publication to the internet are also located in Texas. ROA.139. Thus, even though it is not their responsibility to do so, Plaintiffs have well documented "the identity and format of the sources of proof," "explain[ed] the role of such proof at trial," "show[n] that the sources of proof are substantially noncumulative of other evidence which will be presented at trial." *Hammers*, 2019 WL 6728446, at *8; *see also* ROA.1333–37, 1862–71.

any documentation relevant to the preparation of the cease-and-desist letter and the enactment of § 2C:39-9(l)(2) are invariably located in New Jersey," with no evidence to support that assumption. ROA.2475.

In any case, the court's conclusion that a transfer will not prejudice Plaintiffs does not withstand scrutiny. On the contrary, if the case is transferred and Plaintiffs "are forced to litigate" nearly identical claims "in two courts, half the world apart from each other," they will "[m]anifestly" suffer prejudice, incurring double the cost on those claims and risking "inconsistent results." *Rolls Royce*, 75 F.3d at 680.

The flaw in the district court's reasoning is that it assumes Plaintiffs chose to sue in New Jersey for *convenience*, but this is not the case. Plaintiffs brought their New Jersey action only out of necessity after the district court held they *could not proceed* in the Western District of Texas. In the face of that ruling, Plaintiffs followed the very instructions the district court gave them, seeking relief in New Jersey while they appealed the personal jurisdiction decision in Texas. The New Jersey court quickly stayed the case, and Plaintiffs have been diligently pursuing all their claims in the more convenient forum ever since.

### 2. Compulsory process to secure the attendance of non-party witnesses is largely unnecessary.

The second private interest factor requires courts "to consider the availability of compulsory process to secure the attendance of witnesses, particularly *non-party witnesses* whose attendance may need to be secured by a court order." *Garrett v.*

*Hanson*, 429 F. Supp. 3d 311, 318 (E.D. Tex. 2019) (emphasis added). In fact, "witnesses that are a party," "a party's officers," or in "an employment relationship with a party" are "not [even] considered" in the analysis of this factor because "party witnesses . . . can be presumed to willingly or voluntarily appear for the party." . *Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*, 2011 WL 13224919, at *3 (E.D. Tex. Jan. 12, 2011). In these circumstances, "it is unreasonable to need compulsory process because of the unwillingness of the witness to attend." *Id.*; *accord EEOC v. Faurecia Auto. Seating, LLC*, 2017 WL 4158624, at *4 (N.D. Miss. Sept. 19, 2017); *Transdata, Inc. v. Tri-County Elec. Coop., Inc.*, 2011 WL 13134895, at *3 (E.D. Tex. Aug. 18, 2011).

Thus, for this factor to favor a transfer, the moving party must first show a "need for compulsory process . . . to secure a witness" who is not party to the proceeding. *Williamson-Dickie Mfg. Co. v. M/V HEINRICH J*, 762 F. Supp. 2d 1023, 1030 (S.D. Tex. 2011); *see also Moore v. Unit Tex. Drilling, LLC*, 3:08-CV-2080-N, 2009 WL 10704741, at *3 (N.D. Tex. Nov. 17, 2009) ("[A] party seeking transfer must specifically identify unwilling witnesses.").

If it fails to do so, "the second factor weighs against transfer." *J2 Glob. Communications, Inc. v. Protus IP Sols.*, 2008 WL 5378010, at *3 (E.D. Tex. Dec. 23, 2008); *see also Levy v. City of Rio Grande City*, 2004 WL 2847273, at *4 (N.D.

Tex. Dec. 9, 2004) ("[A]vailability of process given less weight where party seeking transfer fail[s] to establish the need for unwilling witnesses to make its case.").

Below, Grewal did "not demonstrate[] any need for compulsory process in [New Jersey] to secure witnesses." *J2 Glob.*, 2008 WL 5378010, at *3. Instead, he conclusorily asserted that this factor favored a transfer simply because "Plaintiffs' claims against § 2C:39-9(l)(2) and their Commerce Clause claim turn on the meaning and intent of New Jersey state laws and on the intent of [Grewal's] cease-and-desist letter, and the sources of proof relevant to these issues (including any non-party witnesses) are all in New Jersey." ROA.2013–14. This obscure reference to unidentified, *potential* non-party witnesses is not enough to tilt this factor in New Jersey's favor. At most, therefore, it is neutral.

### 3. Litigation in New Jersey would create significant practical problems that do not exist in Texas.

The final private interest factor serves as a catchall that accounts for "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315. This factor largely turns on the same considerations of judicial economy that courts evaluate in the severance context. *See Transdata*, 2011 WL 13134895, at *2 (fourth factor addresses problems "that are rationally based on judicial economy"); *Gorgeous Gals, LLC v. Hey Gorgeous! Spay & Wellness LLC*, 2016 WL 6775445, at *3 (W.D. Tex. Nov. 15, 2016) ("Judicial economy is a paramount consideration when determining whether a transfer is in the

interest of justice" under this factor.) (quoting *In re Vistaprint Ltd*, 628 F.3d 1342, 1346 (Fed. Cir. 2010)).  And as in that context, the inefficiencies of a duplicative litigation in two separate forums "is a paramount consideration":

> The existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice.  To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404 was designed to prevent.

*Transdata*, 2011 WL 13134895, at *2 (quoting *In re Volkswagen of America, Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)) (cleaned up).

Accordingly, this factor favors Texas for the same reason that interests in judicial economy counsel against severance.  Specifically, a transfer would create "multiple lawsuits involving the same issues," both legal and factual, regarding Plaintiffs' publication of information on 3D-printed firearms and the constitutionality of Defendants' respective efforts to censor those publications. *Transdata*, 2011 WL 13134895, at *2.  Litigation of these identical issues would lead "to the wastefulness of time, energy and money that § 1404 was designed to prevent."  *Id.*  And because Texas courts are far more familiar with the underlying facts and legal issues, Texas is the more efficient forum.

For its part, the district court repeated many of its prior errors in its analysis of the fourth private interest factor.  Specifically, the court found that this factor favored a transfer because (1) a "transfer to New Jersey would obviate the need to

adjudicate threshold jurisdictional issues," and (2) Plaintiffs chose "to file multiple lawsuits against [Grewal]" in different forums. ROA.2476. As explained, however, this Court has already resolved the "threshold jurisdictional issues" the district court cites, and Plaintiffs' initiation of a lawsuit in New Jersey eliminates neither the prejudice to Plaintiffs nor the waste of judicial resources that would result from a transfer. The district court was wrong, therefore, to conclude that "the fourth factor weighs in favor of transfer." ROA.2476.

### B.    The public interest factors favor Texas.

The public interest factors include "(1) administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the governing law of the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law." *Volkswagen*, 545 F.3d at 315. *Id.* The district court found that all but the first factor favored a transfer. ROA.2474. Not so. While the court was correct that the first factor is neutral, the latter three strongly favor Texas.

### 1.    The local interest in having this litigation decided in Texas strongly weighs against transfer.

The second public interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue *and the events that gave rise to a suit*." *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020). Important considerations

include the location of the injury, witnesses, and the plaintiff's residence. *See Volkswagen*, 545 F.3d at 317–18; *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 727 (W.D. Tex. 2013). Indeed, "[t]he place of the alleged wrong is one of the most important factors in venue determinations." *Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 412 (S.D. Tex. 2016).

As this Court made clear in its personal jurisdiction ruling, the "place of the alleged wrong" here is primarily Texas. Although Grewal initiated his tortious conduct from New Jersey, his "assertion of legal authority is much broader," deliberately extending beyond his home state into Texas:

> Grewal's letter had a chilling effect on the exercise of their First Amendment rights (among other constitutional and Texas law violations). That chilling effect, in turn, caused them to cease publication and reduced Texans' access to the materials the plaintiffs seek to publish. The statewide impact is not unlike that of the defamatory article at issue in *Calder*, which shaped Californians' view of the defamed actress.

*Grewal II*, 971 F.3d at 492, 495. In short, Grewal's conduct has had "a potentially devastating impact on the plaintiffs—and, by extension, those who wished to benefit from the plaintiffs' activities, including Texas residents." *Id.* at 495. And Grewal "knew that the brunt of the injury would be felt by the plaintiffs in Texas." *Id.* (brackets omitted). This gives Austin a very "strong interest in this case." *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 792 (S.D. Tex. 2005).

Beyond being the place of injury, Austin also has another important interest in this case. Like in *Volkswagen*, one of the plaintiffs, Defense Distributed, resides in Austin, while "not one of the plaintiffs has ever lived in [New Jersey]." 545 F.3d at 317–18; *see also* ROA.1857. Austin thus "has an interest in [Defense Distributed's] commercial success" as well, which Grewal is undermining via his censorship. *Healthpoint v. Derma Scis.*, 939 F. Supp. 2d 680, 693 (W.D. Tex. 2013).

The district court nevertheless held that this factor "weigh[ed] in favor of transfer" because New Jersey purportedly "has a strong interest in having Plaintiffs' claims relating to § 2C:39-9(l)(2), a New Jersey criminal statute, 'examined by local state or federal courts—courts that have expertise interpreting its laws.'" ROA.2472 (quoting *Grewal II*, 971 F.3d at 499 n.3 (Higginson, J., concurring)). While this may be true when a state official seeks to enforce his state's laws *within its own territorial boundaries*, any interest he might have in "having [those] laws examined by local state or federal courts" is considerably diminished where, as here, he "has projected himself across state lines and asserted a pseudo-national executive authority" against the citizens of *other* states. *Grewal II*, 971 F.3d at 493. At that point, the citizens of the target state have a much more pronounced interest in the interpretation and constitutionality of the aggressor state's laws, as the target's citizens have no legislative recourse to see the law repealed. The courts are their only option.

For this reason, when an aggressor state like New Jersey reaches beyond its own boundaries, it forfeits any "benefit" to which it might otherwise be entitled from local "courts that have special expertise interpreting its laws." *Grewal II*, 971 F.3d at 499 n.3 (Higginson, J., concurring). If Grewal wishes to limit interpretation of Section 3(*l*)(2) or its civil laws to New Jersey courts, he need only confine his enforcement efforts to New Jersey.

Lest there be any doubt that New Jersey's interest in this case pales in comparison to Texas's, the Court need look no further than Grewal's own conduct. After the Western District of Texas forced Plaintiffs to file suit in New Jersey, Grewal did not permit his local federal court to entertain the merits. Instead, he immediately sought a stay "pending final resolution of the Texas action," *Def. Distributed et al. v. Grewal*, 3:19-cv-4753-AET-TBJ, Doc. 20 at 2 (D. N.J.), which the district court granted and the Third Circuit upheld. *See Att'y Gen. of New Jersey*, 972 F.3d 193. If New Jersey's interest in this case were truly as powerful Grewal contends, its chief law enforcement officer has a poor way of showing it.

### 2.    Texas courts' familiarity with the case weighs strongly against transfer.

The third public interest factor "the familiarity of the forum with the law that will govern the case." *Volkswagen*, 545 F.3d at 315. Here, both potential venues have capable district courts with well-equipped benches. But as discussed at length above, this Court and the district court—*unlike* the New Jersey courts—have already

examined the dense factual, procedural, and legal issues at hand, giving them a pronounced advantage on the "familiarity" front.

The district court held otherwise because "New Jersey courts have greater familiarity with [the state's] overall statutory framework regulating firearms and the public policies those laws promote and have been the primary fora for deciding legal challenges to New Jersey firearms laws." ROA.2472.

Here, however, New Jersey courts' familiarity with New Jersey law will not produce any meaningful efficiencies that would render New Jersey the better forum. Plaintiffs have not filed any New Jersey law claims, and the only statute they target—Section 3(*l*)(2)—unambiguously prohibits Plaintiffs' speech.  As such, there is no need to interpret it under New Jersey law.  Grewal's cease-and-desist letter, meanwhile, expressly directs Plaintiffs to "halt publication of the printable-gun computer files." ROA.57.  The court need not be an expert in New Jersey law to see the unconstitutional ends Grewal has accomplished with it.[7]

The district court also discounted its own familiarity with the case because it has largely focused on jurisdiction, and Plaintiffs have filed more than just their First Amendment claims.  ROA.2472.  But the First Amendment claims constitute the heart of this case, and both this Court and the district court have analyzed the merits

---

[7] In any case, Texas courts familiarity with Plaintiffs' Texas-law claims would more than offset any efficiencies that might be gained from New Jersey courts' familiarity with New Jersey law. *See Healthpoint*, 939 F. Supp. 2d at 695; ROA.1932–34.

to some extent.  *See, e.g.*, *State Dep't II*, 838 F.3d at 468–76 (Jones, J., dissenting);

*State Dep't I*, 121 F. Supp. 3d at 695; Appellants' Mot. for Prelim. Inj., Doc. No.

00515880396, at 9–17; ROA.1341–49.  Regardless, the number of First Amendment

claims does not detract from Texas courts' intimate familiarity with the case's

complex factual or procedural history.  It is this familiarity, *combined* with the

courts' knowledge of the constitutional issues, that makes this factor favor Texas.

### 3.    The avoidance of conflict of laws weighs against transfer.

The last public interest factor seeks to avoid "unnecessary problems of

conflict of laws [or in] the application of foreign law."  *Volkswagen*, 545 F.3d at

315.  There are no risks of such a conflict here, however.  Plaintiffs have brought

primarily federal law claims; state law will only be relevant to their contract-based

claims, which Texas law will plainly govern.  As noted, moreover, the "application

of [the] foreign law" of New Jersey will be unnecessary in this case because the

statute is unambiguous, so the district court's fears that Texas and New Jersey courts

will construe Section 3(*l*)(2) differently is misplaced.  ROA.2473.  And in the

unlikely event that a conflict *does* arise, New Jersey courts' interpretation will

obviously control in New Jersey.  Thus, as long as Grewal keeps his enforcement

efforts to his own state, any conflict in New Jersey law will make no difference.

On the other hand, transferring the claims against New Jersey creates a risk of

a federal circuit split.  As articulated above regarding severance, the core issues to

be litigated in this case are the same across Defendants.  With two sets of federal courts in two different circuits addressing the same, unsettled federal law issues, the potential for a conflict in federal law increases dramatically.  Should such a conflict emerge, Plaintiffs' constitutional rights would be left out in the cold, despite their success in one of the circuits.  The risk of such a conflict pushes this factor in favor of Texas.

**Conclusion**

The Court should reverse the district court's decision to sever the case against

Grewal and transfer it to New Jersey, render a judgment denying the motion, and

return the case to the Western District of Texas for the resumption of proceedings

on the merits.

June 17, 2021                                    Respectfully submitted,

Clark Hill PLC                                   Beck Redden LLP
Matthew A Goldstein                              */s/ Chad Flores*
1001 Pennsylvania Avenue Northwest               Chad Flores
Suite 1300 South                                 Daniel Nightingale
Washington, DC 20004                             Hannah Roblyer
(202) 550-0040                                   1221 McKinney Street
                                                 Suite 4500
Josh Blackman LLC                                Houston, Texas 77010
Josh Blackman                                    (713) 951-3700
1301 San Jacinto Street
Houston, Texas 77002
(202) 294-9003

Attorneys for Plaintiffs – Appellants
Defense Distributed and Second Amendment Foundation, Inc.

## Certificate of Service

On , 2021, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system to the following:

Alexander Hardiman
alexander.hardiman@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman, L.L.P.
31 W. 52nd Street
New York, NY 10019

Ronald Casey Low
casey.low@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman, L.L.P.
401 Congress Avenue
Austin, TX 78701

Angela Cai
angela.cai@njoag.gov
New Jersey Attorney General's Office
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 106
Trenton, NJ 08625

/s/ *Chad Flores*
Chad Flores

**CERTIFICATE OF COMPLIANCE**

This filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27 because it contains 12,828 not-exempted words.

This filing complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 and Fifth Circuit Rule 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

/s/ *Chad Flores*
Chad Flores